UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE ARITA (# 422864)    :    CIVIL ACTION

:    NO. 14-116-BAJ-SCR

VERSUS

:    JUDGE JACKSON

MAJOR HOOKER, ET AL.    :    MAGISTRATE JUDGE RIEDLINGER

**************************************************************************

STATEMENT OF UNDISPUTED FACTS

1. Plaintiff, Theodore Arita, DOC# 422864, is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("Department"), and at all times relevant hereto, was confined at Louisiana State Penitentiary ("LSP") in Angola, Louisiana.

2. Defendant, Joseph Hooker, is a Corrections Major at LSP.

3. Defendant, Jimmy Smith, is a Corrections Colonel at LSP.

4. Any and all claims of alleged verbal harassment and/or threats that are asserted in the within action should be dismissed.

5. Major Joseph Hooker and Colonel Jimmy Smith should be entitled to 11th Amendment immunity.

I.    **Misrepresentations in the Verified Complaint**

6. Section I(C) on pages 2-3 of the complaint contains misrepresentations concerning lawsuits the plaintiff has previously filed.

7. Specifically, in response to the question which asks whether plaintiff has previously filed federal lawsuits or appeals, related or unrelated to the issues raised in the complaint, plaintiff indicates that he filed suit in 2009 alleging failure to protect by security and that it was dismissed for failure to state a claim upon which relief can be granted.

1

8. Contrary to the representations made by plaintiff, court records show that he filed 3 lawsuits before the instant one was filed on February 20, 2014.[1]

9. Also, the 2009 action referred to by plaintiff in the complaint, Arita v. Stagg (USM-09-158), was an excessive force and deliberate indifference case that was dismissed after a 5 day jury trial on October 4, 2013.

**VI.   Major Joseph Hooker And Colonel Jimmy Smith Should be Entitled to Qualified Immunity on Plaintiff's Claims of Excessive Force and Deliberate Indifference**

10. Major Joseph Hooker and Colonel Jimmy Smith should be entitled to qualified immunity on plaintiff's claims of excessive force and deliberate indifference.

**a.   Plaintiff's Claim of Excessive Force and Deliberate Indifference Against Major Joseph Hooker**

11. Plaintiff alleges Major Joseph Hooker subjected him to excessive force on the Gator 3 right tier of Camp J on November 29, 2012 by releasing "large amounts" of chemical agent into his cell without provocation 4 different times, slapping him and twisting his hand. (Plaintiff fails indicate where on his body Hooker allegedly slapped him or specify which hand Hooker allegedly twisted in the complaint).

12. Inmate Arita also alleges Hooker told tactical team members to beat him, that the tactical team violently beat him by shocking him, punching him, kneeing him in the head, kicking and stomping on him for 15 – 20 minutes and also that Hooker stood by and watched.[2]

13. Plaintiff, who has acknowledged that he has uncontrollable anger problems,[3] was housed in Cell No. 9 on the Gator 3 right tier of Camp J on November 29, 2012. Camp J is the most restrictive part of the prison. At approximately 8:25 a.m. on November 29, 2012, plaintiff began to cause a disturbance on the tier by racking down and throwing objects out of his cell.  A cell ex-

---

[1] See Case Nos. USM-10-425 and USM-11-850.
[2] Rec. Doc. 1, pp. 4-7.
[3] See Rec. Doc. 1, p. 7; see also Exhibit D.

traction was being conducted on offender Michael Steward, who was in cell #7 of the same unit, while plaintiff was creating the disturbance.[4]

14. Major Hooker gave plaintiff several orders to stop the disruption and he refused all orders given. The cell extraction was then conducted on Steward. Major Hooker then exited the tier and obtained a can of Sabre Red Phantom Chemical agent. Hooker gave plaintiff several more direct verbal orders to cease the disturbance he was creating when he returned to the front of plaintiff's cell. Again, inmate Arita refused all orders given.[5]

15. At that point, Major Hooker administered a one second burst of chemical agent into the cell. Can B of Sabre Red, which is the can of mace Major Hooker retrieved from the gas locker on November 29, 2012, weighed 4.0 ounces before it was used. Can B weighed 3.7 ounces after Hooker released the chemical agent into the plaintiff's cell on the aforementioned date.[6] Three tenths of an ounce of mace was used by Hooker in a good faith effort to try to gain control of the plaintiff.

16. Hooker ordered plaintiff to cease the disturbance he was creating after chemical agent was released. Plaintiff refused all orders given and picked up a stack of papers and threw them at the cell bars. The situation created by the plaintiff necessitated some degree of force, as attempts to gain his compliance through direct verbal orders and chemical agents were unsuccessful. Since plaintiff failed to comply with direct verbal orders to cease the disturbance he was creating, Major Hooker ordered the cell entry team to remove him from his cell.[7]

17. In accordance with LSP's use of force policy, the only force that was used on plaintiff on November 29, 2012 was that which was necessary to gain control of the situation he created

---

[4] Exhibits A and G.
[5] Id.
[6] Exhibit I.
[7] Exhibits A and G.

when he refused to stop the disturbance he was creating. Plaintiff was written up for defiance and aggravated disobedience as a result of his behavior.[8]

18. Contrary to the allegations asserted by plaintiff in the complaint, Major Hooker did not release three tenths of an ounce of chemical agent into his cell on November 29, 2012 without provocation.

19. As evidenced by the gas logs, Hooker likewise did not subject him to excessive force by repeatedly releasing large amounts of chemical agent in to his cell. Additionally, Hooker did not slap plaintiff or twist his hand while he was in restraints nor did he stand by and watch or laugh while cell entry team members allegedly beat him on November 29, 2012. Finally, Major Hooker did not direct cell entry team members to beat plaintiff.

20. *In the instant case, plaintiff did not sustain any injuries from the use of chemical agent by Major Hooker and he doesn't allege that he did.* In the absence of a physical injury, the only inference that can be drawn is that the force that was used on plaintiff on November 29, 2012, was used in a good faith effort to maintain and restore discipline.

21. Clearly, the use of chemical agent by Major Hooker was necessary to bring the situation created by plaintiff under control. Major Joseph Hooker should be entitled to qualified immunity on the claims asserted against him in this case.

---

[8] Exhibit A.

4

**b.    Plaintiff's Very Own Medical Complaints at the Infirmary on November 29, 2012 Rebut a Finding of Excessive Force**

22. The medical evidence shows that plaintiff voiced no medical complaints related to alleged overexposure to chemical agent or that one of his hands had been twisted on November 29, 2012. Moreover, in the complaint, inmate Arita makes no allegations of injury relating to alleged exposure to large amounts of chemical agent "all about his face and body" and eyes.[9] Finally, plaintiff fails to specify where on his body he was allegedly slapped, and there is no evidence, medical or otherwise, to support that allegation.

23. Plaintiff's allegations of repeated exposure to "large amounts" of chemical agent is not supported by the medical evidence,  by the allegations asserted by him in the complaint or by the gas logs from November 29, 2012.[10]

**c.    The Medical Evidence**[11]

24. In the complaint, plaintiff alleges his right elbow was swollen, his left knee was injured and his back was "badly" injured as a result of allegedly being abused on November 29, 2012.

25. Plaintiff was examined at approximately 9:15 a.m. on November 29, 2012, at which time he complained of back, face, head discomfort, dizziness and neck pain. The examination of inmate Arita was unremarkable. His vital signs were stable, he was alert, ambulatory and he had no neurological symptoms. The medical examination revealed no significant injuries on plaintiff's person. He was given a follow-up appointment with a nurse practitioner. X-rays of inmate Arita's knee, back, neck, thorax and skull were taken. All of the x-rays were negative, with the excep-

---

[9] Rec. Doc. 1, pp. 5 - 6.
[10] Exhibit I.
[11] Exhibit F.

5

tion of the x-ray of his back which showed degenerative disc disease with no fracture malalignment or spondylolisthesis.[12]

26. Pictures taken of plaintiff on November 29, 2012 show he had an acute minor abrasion on his left thumb and that he had old wounds, none of which were acute, on his back and buttocks.[13]

27. At approximately 5:43 on November 30, 2012, plaintiff was examined for complaints of a swollen right elbow he was barely able to move, severe pain in his left knee he could barely put weight on, that his lower back was reinjured, that he could barely stand up straight or bend his back and that he was in severe pain as result of the cell entry that occurred on November 29, 2012.

28. His vitals were within normal limits, he had moderate edema on his right elbow with mild discoloration noted. There was mild edema with no discoloration on his left knee. No edema, spasms or discoloration was noted on his back. He received a prescription for Naproxen.

29. Inmate Arita has arthritis, which is a degenerative disease, in his back. He has received medical treatment on his back since as early as September 1, 2004. MRI's that were taken of his back on June 19, 2008 and September 15, 2009 revealed degenerative changes.

30. Plaintiff previously received medical treatment on his left knee on October 26, 2004 and on March 7, 2012. Also, he received an x-ray on his right elbow due to trauma on January 10, 2005.[14]

31. Plaintiff was in his cell from the time he left the infirmary at approximately 10:10 a.m. on November 29, 2012 until he received medical evaluation at approximately 5:43 am on November 30, 2012. The picture that was taken of inmate Arita's elbows and knees at the infirmary on No-

---

[12] Exhibit C.
[13] Exhibit H.
[14] Exhibit D.

vember 29, 2012 reveal no redness and/or injury. There exists no medical evidence that he rein-jured his back on the aforementioned date.

32. On December 4, 2012, plaintiff was examined for complaints of discomfort and severe pain in his butt bone and severe pain in his left shoulder since November 29, 2012.  His vitals were within normal limits, he was ambulatory without distress, no deformities or discoloration was found on his extremities. Plaintiff would not let the medical professional check his spine. He received a 3 day supply of Ibuprofen.

33. Inmate Arita complained of severe complications, difficulty and pain in his left knee, left shoulder, blistered skin from chemical agent and pain in his butt to the extent that he could not sit and lay down at approximately 8:45 a.m. on December 10, 2012.  Plaintiff was ambulatory and alert during the examination. There were no significant signs of trauma or distress. The examination revealed no obvious deformity, no sign of skin irritations. He also had good flexion and extension in both lower extremities and lumbar spine.

34. He was seen in the clinic at approximately 12:35 p.m. on December 10, 2012, at which time he complained of low back pain and buttocks pain post "kick." Plaintiff walked without a limp, moved easily in the chair without complaints of low back pain. He had good lumbar spine range of motion with no specific points of tenderness.

35. In Dr. Paul Toce's medical opinion, inmate Arita was not subjected to excessive force on November 29, 2012.

**d.      Plaintiff Made No Specific Mental Health Complaints Concerning the Alleged Events Giving Rise to the Lawsuit from November 29, 2012 – December 31, 2012**

36. Plaintiff made no specific mental health complaints concerning the alleged events giving rise to the lawsuit from November 29, 2012 – December 31, 2012.[15]

---

[15] Exhibit C.

**e.      The Photographs of Plaintiff Taken on November 29, 2012**

37. The photographs that were taken of plaintiff at the infirmary on November 29, 2012 rebut a finding of excessive force or deliberate indifference. Pictures taken of plaintiff on November 29, 2012 show he had an acute minor abrasion on his left thumb and that he had old wounds, none of which were acute, on his back and buttocks.[16]

38. Plaintiff alleges the E.M.T. who took the pictures avoided taking photographs of his face and only took pictures of the top of his head. That statement is clearly untrue. Photographs of plaintiff's entire body, from his head to his feet, were taken on November 29, 2012.

39. Plaintiff also alleges the photographer failed to take pictures of the right side of his face, which was swollen. He also alleges pictures of his eye, which was almost completely shut, were not taken. Again, the photograph reveals that the right side of plaintiff's face is not swollen and his eyes are closed, not shut from allegedly being hit.

**f.      Plaintiff's Claim of Deliberate Indifference Against Colonel Jimmy Smith**

40. The allegations asserted by inmate Arita against Colonel Jimmy Smith in the complaint are untrue.

41. Colonel Smith was the ranking supervisor in charge of all of Camp J on November 29, 2012. Smith was not on the Gator 3 right unit when the alleged events giving rise to the lawsuit occurred. Smith was informed of the incident, however he was unable to report to the unit because he was performing other duties at Camp J.[17]

42. The claim of deliberate indifference that is asserted against Colonel Jimmy Smith in the within action fails to state a claim upon which relief can be granted, as there is no evidence that inmate Arita was subjected to excessive force on November 29, 2012.

---

[16] Exhibit H.
[17] Exhibit E.

8

43. Accordingly, the deliberate indifference claim should be dismissed and Colonel Jimmy Smith should be entitled to qualified immunity.

**g.     There Exists No Genuine Issue of Material Fact with Respect to the Excessive Force and Deliberate Indifference Claims**

44. A court may only grant summary judgment if there is no genuine issue of material fact.[18]

45. A necessary element of the excessive force claim is the proof of injury resulting from the use of force.[19] The extent of injury suffered is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.[20] Also, the extent of injury may also provide some indication of the amount of force applied.

46. There is no evidence in the record sufficient to create a genuine dispute for trial as to whether Major Joseph Hooker subjected the plaintiff to an excessive use of force by releasing large amounts of chemical agent into his cell, by slapping him or by twisting his hand on November 29, 2012.

47. There likewise exists no genuine dispute for trial as to whether Major Hooker was deliberately indifference to inmate Arita's safety. Finally, there is no evidence in the record that Col. Jimmy Smith failed to intervene on plaintiff's behalf because he was not subjected to excessive force.

48. In light of the fact that the medical evidence, gas log, photographs of plaintiff and the defendants' accounts rebut the allegations asserted by him against in the lawsuit, summary judgment should be granted in favor of the defendants.

The above facts are believed to be undisputed and therefore present a proper subject for a motion for partial summary judgment in that there exists no genuine issues of material fact that

---

[18] Federal Rules of Civil Procedure Rule 56.
[19] Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied,* 507 U.S. 926, 113 S.Ct. 1298 (1993).
[20] Wilkins v. Gaddy, 130 S.Ct. 1178.

would preclude summary judgment. Therefore, defendants, Major Joseph Hooker and Colonel Jimmy Smith, should be entitled to judgment as a matter of law.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL**

BY:   s/ Stacey Johnson
      Stacey Johnson
      Bar Roll No. 27331
      Assistant Attorney General

      Louisiana Dept. of Justice
      Litigation Division
      1885 N. 3rd Street, 4th Floor
      P.O. Box 94005
      Baton Rouge, LA 70802
      Telephone: (225) 326-6402
      Facsimile: (225) 326-6495
      Johnsonst@ag.state.la.us

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2014, a copy of the foregoing Statement of Undisputed Facts was filed electronically with the Clerk of Court using the CM/ECF system. I also certify that I have mailed by United States Postal Service, Certified Mail, Return Receipt No. 7011 3500 0003 2439 3728, this filing to the following non-CM/ECF participant:

Theodore Arita, DOC #422864
Louisiana State Penitentiary
Angola, LA  70712

      s/ Stacey Johnson
      Stacey Johnson # 27331
      Attorney for Defendants