UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE ARITA (#422864)

VERSUS                                          CIVIL ACTION

MAJ. HOOKER, ET AL                              NUMBER 14-116-BAJ-SCR

## **NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.
    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, January 22, 2015.

                                    /s/ Stephen C. Riedlinger
                                    STEPHEN C. RIEDLINGER
                                    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE ARITA (#422864)

VERSUS                                                  CIVIL ACTION

MAJ. HOOKER, ET AL                                      NUMBER 14-116-BAJ-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the defendants' Motion for Partial Summary Judgment. Record document number 15. The motion is opposed.[1]

For the following reasons, the defendants' motion should be granted in part and denied in part.

**I. Background**

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary, Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Maj. Joseph Hooker, Col. Jimmy Smith, unidentified members of the tactical team, unidentified emergency medical technicians and an unidentified treating physician.[2] Plaintiff alleged that on November 29, 2012, he was sprayed with a

---

[1] Record document numbers 29, 30.

[2] The unidentified tactical team members, emergency medical technicians and treating physician were not served with the summons and complaint and did not participate in the defendants' motion for summary judgment.

chemical agent, beaten without provocation, and was denied mental health treatment and adequate medical treatment, all in violation of his constitutional rights.

Defendants Maj. Hooker and Col. Smith moved for summary judgment relying on a statement of undisputed facts, their own affidavits and the affidavit of Dr. Paul Toce, copies of the plaintiff's medical and mental health records, copies of disciplinary and warden's unusual occurrence reports, excerpts from the plaintiff's Master Prison Record, a copy of the plaintiff's conduct report, copies of the plaintiff's inmate location sheets, and a copy of the Camp J Gator Unit Chemical Agent Logbook for the period between November 29, 2012 and November 30, 2012.

Plaintiff opposed the defendants' motion relying on a statement of disputed facts, his affidavit and the affidavits of Phillip Jelks, Vidale G. Tasby, Rickey Evans, Kelvin Stewart and Haywood Ceasar, copies of photographs taken of the plaintiff following the incident, a copy of page ten of prison policy LSP-09.002, a copy of a disciplinary report issued to the plaintiff on November 29, 2012, a copy of the plaintiff's request for administrative remedies, and copies of the plaintiff's medical records.

## II. Factual Allegations

Plaintiff alleged that on November 29, 2012, he was subjected to an excessive use of force and was denied mental health and

medical treatment in violation of his constitutional rights. Specifically, the plaintiff alleged that Maj. Hooker sprayed another inmate with a chemical agent and then instructed Sgt. Hunter to close all of the booth cell doors on the unit. Plaintiff alleged that when he asked that his booth cell door not be closed, Maj. Hooker became angry and repeatedly sprayed him with a chemical agent and caused a tactical cell entry team to beat him without provocation. Plaintiff alleged that during the incident, he asked to be examined by mental health personnel but his requests were ignored. Plaintiff alleged that following the incident, he was denied adequate medical treatment. Plaintiff alleged that he sustained injuries to his head, elbow, knee, back and tailbone.

### III. Applicable Law and Analysis

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need

only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

**B. Qualified Immunity**

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id*., at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather when

measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

### C. Excessive Force

Force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, *supra*; *Whitley v. Albers*, *supra*. A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

There is conceptual distinction between the *de minimis* injury and a *de minimis* use of force. *Wilkins v. Gaddy*, 559 U.S. 34, 38, 130 S.Ct. 1175, 1178 (2010) (per curiam) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). To prevail on an Eighth Amendment excessive force claim, the plaintiff must establish that force was not

"applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm," and that he suffered an injury. *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996). The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10, 112 S.Ct. at 1000. The absence of serious injury, while relevant to the inquiry, does not preclude relief. The Fifth Circuit Court of Appeals has never directly held that injuries must reach beyond some arbitrary threshold to satisfy an Eight Amendment excessive force claim. *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006).

Moreover, the Supreme Court has made clear that the presence of even minor injuries do not relieve the defendants of liability for using excessive force. *See Wilkins*, 539 U.S. at 38, 130 S.Ct. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). For Eighth Amendment purposes, evidence of the existence and extent of injuries are not dispositive. Instead, such information is considered in conjunction with the other *Hudson* factors to help determine whether the force used was excessive. *See Brown,* 472 F.3d at 386-87 ("In evaluating excessive force claims, courts may look to the seriousness of the injury to

6

determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" quoting *Whitley*, 475 U.S. 321, 106 S.Ct. 1085).

Plaintiff alleged that he was subjected to an excessive use of force after he requested that the door to his booth cell remain open. Specifically, the plaintiff alleged that on November 29, 2012, Maj. Hooker sprayed a chemical agent into inmate Michael Stewart's cell. Plaintiff alleged that while inmate Stewart was being sprayed with a chemical agent, Sgt. Hunter began closing the booth cell doors to all cells on the Camp J Gator Right Tier. Plaintiff alleged that he respectfully asked Sgt. Hunter to leave his booth door open because he was experiencing difficulty breathing as a result of the chemical agents sprayed on the unit.

Plaintiff alleged that Maj. Hooker overheard his conversation with Sgt. Hunter and became extremely angry. Plaintiff alleged that Maj. Hooker began running up and down the tier asking "Who's gonna be next?" and "Who's in my motha-f***ing business?" Plaintiff alleged that Maj. Hooker came to his cell and after accusing the plaintiff of interfering in his business began spraying the plaintiff with a chemical agent. Plaintiff alleged that he asked to be seen by mental health personnel but Maj. Hooker ignored his request . Plaintiff alleged that Maj. Hooker stated,

7

"You're next," and closed his booth cell door.

Plaintiff alleged that approximately 15-20 minutes later, the booth cell door was opened. Plaintiff alleged that Maj. Hooker, Col. Smith and a tactical team were outside his cell. Plaintiff alleged that Maj. Hooker and Col. Smith stood in the hallway watching the whole incident. Plaintiff alleged that Maj. Hooker stated "beat his a** good, and try not to leave too many visible injuries or kill the sorry b*tch." Plaintiff alleged that he attempted to place his hands in cell bars hatch to be restrained and asked to declare himself a mental health emergency, but Maj. Hooker once again sprayed him with a chemical agent.

Plaintiff alleged that the tactical team entered his cell and shocked him with the electric shield forcing him to the floor and then punched, kneed, kicked and stomped him while he laid helpless on the ground offering no resistance and repeatedly stating that he surrendered. Plaintiff alleged that after he was restrained the tactical team continued to beat him and shock him with the electrical shield for over 15 minutes.

Plaintiff alleged that he was removed from the floor and a tactical team member repeatedly kneed him in his face until he lost consciousness. Plaintiff alleged that when he regained consciousness, he was sitting in the doorway of his cell. Plaintiff alleged that someone held his head while Maj. Hooker sprayed him with a chemical agent in his eyes and face. Plaintiff

8

alleged that he was then dragged off the tier.  Plaintiff alleged that he could barely stand without assistance.

Plaintiff alleged that while he was in the lobby of Gator Unit, Maj. Hooker ordered the tactical team officers to place him in the shower area face down on the floor.  Plaintiff alleged that after entering the shower cell, two tactical team members kicked his legs out from under him.  Plaintiff alleged that he fell to the floor and was struck several times in the face and head until he turned over onto his stomach.

Plaintiff alleged that Maj. Hooker entered the shower area and slapped him and twisted his hand.  Plaintiff alleged that Maj. Hooker asked him if he was going to stay out of his business and continued assaulting the plaintiff until he responded.  Plaintiff alleged that Maj. Hooker released him, sprayed another burst of chemical agent in his face and then exited the cell.  Plaintiff alleged that he observed several officers, including Col. Smith, watching the whole incident and laughing.

Plaintiff alleged that when he arrived at the hospital he was examined by an unidentified emergency medical technician (hereafter "EMT") who had a bad attitude and interrupted the plaintiff while he was explaining his complaint.  Plaintiff alleged that the EMT stated that there was nothing wrong with the plaintiff.

Plaintiff alleged that he was examined by an unidentified doctor who also had a bad attitude.  Plaintiff alleged that the

9

doctor examined him and asked the plaintiff to state what was wrong with him. Plaintiff alleged that the doctor failed to document any of his complaints except that he had received several blows to the head and was experiencing dizziness. Plaintiff alleged that the doctor ordered x-rays of his head but did not order x-rays of his elbow, knee, back or tailbone.

Plaintiff alleged that photographs were taken but an unidentified EMT failed to take photographs of the right side of his face and swollen eye.

Plaintiff offered his own affidavit in opposition to the defendants' motion for summary judgment in which he essentially restated the allegations in his complaint under penalty of perjury.[3] In addition, the plaintiff offered the affidavits of inmates Phillip Jelks[4], Vidale G. Tasby[5], Rickey Evans[6], Kelvin Stewart[7] and Haywood Ceasar[8] in opposition to the defendants' motion for summary judgment.

According to Jelks, on the date of the incident he was confined on Gator 3 Right cell number 2. Jelks stated that he

---

[3] Record document number 29-3, pp. 3-9, Exhibit 2.

[4] *Id*. at 10-14, Exhibit 3.

[5] *Id*. at 15-18, Exhibit 4.

[6] *Id*. at 19-25, Exhibit 5.

[7] *Id*. at 26-27, Exhibit 6.

[8] Record document number 29-4, p 24, Exhibit 33.

heard Maj. Hooker tell Sgt. Hunter to close the booth cell door, then heard the plaintiff ask Sgt. Hunter to leave the booth cell doors open, and heard Maj. Hooker yell at the plaintiff and spray him with a chemical agent. Jelks stated that he heard Maj. Hooker tell the tactical cell entry team to beat an inmate up but to try not to kill him. Then Jelks heard Maj. Hooker and Col. Smith yell to Sgt. Hunter to open up the plaintiff's cell for the tactical cell entry team. Jelks stated he heard the sound of a taser and the tactical cell entry team beating the plaintiff, and heard the plaintiff say that he was not resisting and that he was laying down. Jelks stated that he heard the tactical cell entry team continue to beat the plaintiff, then things got quiet for a few seconds, and then he heard Maj. Hooker say to hold the plaintiff's head up and then he heard the sound of more gas being sprayed. Jelks then observed the tactical cell entry team violently drag the plaintiff by his arms and jumpsuit into the lobby, where he saw the plaintiff bleeding from his mouth, wrist and head. Jelks stated that he observed several ranking officers on the unit during the incident, including Maj. Hooker and Col. Smith. Jelks stated that he never heard the plaintiff create a disturbance or refuse any orders.

According to Tasby, Maj. Hooker sprayed the plaintiff with a chemical agent and close his booth cell door. Tasby stated that the tactical cell entry team entered the plaintiff's cell and he

11

was sprayed with more chemical agent. Tasby stated that he heard the tactical cell entry team beat the plaintiff even while the plaintiff yelled that he was not resisting and that he was laying down. Tasby stated that after a brief silence he heard a long burst of chemical agent being released. Tasby stated that he saw the tactical cell entry team drag the plaintiff to the lobby, and he saw blood on the plaintiff's arms, mouth and head. Tasby stated that he saw Maj. Hooker and Col. Smith on the unit.

Inmates Evans, Stewart and Ceasar gave similar versions of the incident.

Defendants offered a different version of the incident.[9] Defendant Maj. Hooker stated that on the day of the incident a cell extraction team was on the unit to remove inmate Michael Steward from his cell.[10] While Steward was being removed from his cell, the plaintiff caused a disturbance on the tier by shaking his cell bars and throwing objects out of his cell.[11] Maj. Hooker stated that he gave the plaintiff several orders to stop the disturbance but the plaintiff refused to comply with his orders.[12] He left the unit and

---

[9] Record document number 15-7, Exhibit G.

[10] *Id*. at 2.

[11] *Id*.

[12] *Id*.

retrieved a can of Sabre Red Phantom Chemical agent.[13] When he returned, he gave the plaintiff several more direct orders to cease the disturbance, and after the plaintiff refused to comply he sprayed a one second burst of chemical agent into the plaintiff's cell.[14] Maj. Hooker stated that the plaintiff was again ordered to cease the disturbance, but the plaintiff responded by throwing papers at his cell bars.[15] Maj. Hooker then ordered the cell entry team to remove the plaintiff from his cell.[16] Following the incident the plaintiff was transported to the prison infirmary for medical evaluation.[17]

Defendant Maj. Hooker asserted that he applied only the amount of force necessary to gain control over the plaintiff and that the plaintiff did not sustain injuries consistent with the amount of force he alleged was used. The gist of Maj. Hooker's argument is that because there is no objective medical evidence to support a finding that the plaintiff sustained more than a *de minimis* injury as a result of the alleged use of force, he is entitled to summary judgment as a matter of law.

Defendant Col. Smith denied he was present during the incident

---

[13] *Id*. at 3.

[14] *Id*.

[15] *Id*.

[16] *Id*. at 4.

[17] *Id*.

and that he used any force on the plaintiff.[18] Defendant Col. Smith contends that because he was not present during the incident, he is entitled to summary judgment as a matter of law.

Plaintiff's medical records showed that on November 29, 2012, he was examined by medical personnel after the use of force for complaints of dizziness and head, back, face and neck pain.[19] Plaintiff's medical records showed that his condition was stable with no neurological signs.[20] X-rays were ordered and a follow up appointment with a doctor was scheduled.[21] Plaintiff's medical records showed that x-rays of the skull showed no fractures.[22]

Plaintiff sought medical treatment for complaints of elbow, knee, and back pain on November 30,[23] tailbone and shoulder pain on December 4,[24] and elbow, back, knee and shoulder pain on December 10.[25]

Dr. Toce's summary judgment affidavit states the plaintiff sustained only a moderate edema on his right elbow and mild edema

---

[18] Record document number 15-5, Exhibit E.

[19] Record document number 23, p. 2.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 4.

[23] *Id.* at 6.

[24] *Id.* at 7.

[25] *Id.* at 8.

14

on his left knee.[26]

Even if the medical records show that the plaintiff could prove only that he suffered minor injuries to his right elbow and left knee, this is not per se a *de minimis* injury. At the time of the alleged incident, a reasonable corrections officer would have known that spraying an inmate with an excessive amount of chemical agent and causing the inmate to be violently beaten without provocation was not objectively reasonable. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986) (force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline). There are also significant material facts in dispute regarding the remaining *Hudson* factors, i.e., need for the application of any force at all, the relationship between the need for and the use of force, the threat reasonably perceived by the prison officials, and efforts made to temper the severity of the response to the perceived need. *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999. Finally, there are material facts in dispute as to whether Col. Smith was present and involved in the November 29, 2012 incident. Resolution of these disputed factual issues will depend on the credibility of the witnesses and weighing of the evidence. When ruling on a motion

---

[26] Record document number 15-6, Exhibit F.

for summary judgment, the court cannot make credibility determinations nor weigh the evidence.

**D. Denial of Mental Health Treatment**

Plaintiff alleged that after Maj. Hooker sprayed him with a chemical agent he asked to be seen by mental health personnel but Maj. Hooker ignored his request.

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

The summary judgment evidence showed that immediately following the incident the plaintiff was examined by medical personnel. Plaintiff did not voice any complaint at that time that he needed mental health treatment. Plaintiff's mental health records showed that the plaintiff was examined by mental health personnel on December 17, 2012 and required no treatment.[27] Plaintiff did not allege, nor is there any evidence in the record,

---

[27] Record document number 23, p. 13.

that the defendant knew the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it.  Defendant Maj. Hooker is entitled to summary judgment on the plaintiff's claim that he was deliberately indifferent to the plaintiff's serious mental health needs.

To the extent that the plaintiff's complaint can be read to allege that defendant Col. Smith also failed to provide the plaintiff with mental health treatment following the incident, for the foregoing reasons he also is entitled to summary judgment on the plaintiff's denial of mental health treatment claim.

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that the defendants' Motion for Partial Summary Judgment be granted in part, dismissing the plaintiff's claims that defendants Maj. Joseph Hooker and Col. Jimmy Smith were deliberately indifferent to the plaintiff's serious mental health needs.  In all other respects the motion should be denied and that this matter be referred back to the magistrate judge for further proceedings.

Baton Rouge, Louisiana, January 22, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE