**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **THEODORE ARITA (# 422864)** | : | **CIVIL ACTION** |
| | : | **NO. 14-116-BAJ-SCR** |
| **VERSUS** | : | **JUDGE JACKSON** |
| **MAJOR HOOKER, ET AL.** | : | **MAGISTRATE JUDGE RIEDLINGER** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT**</u>[1]

**MAY IT PLEASE THE COURT:**

Movers, Joseph Hooker and Jimmy Smith, urge this Honorable Court to dismiss plaintiff's claims against them through summary judgment.

**I.    <u>STATEMENT OF THE CASE</u>**

Plaintiff, Theodore Arita, DOC#422864, is an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("Department"), and at all times relevant hereto, was confined at Louisiana State Penitentiary ("LSP") in Angola, Louisiana.

The appearing defendants in this Motion are:

1. Joseph Hooker, a Corrections Major at LSP.

2. Jimmy Smith, a Corrections Colonel at LSP.

Plaintiff filed suit against the defendants pursuant to 42 U.S.C. Section 1983 alleging excessive force and deliberate indifference. As relief, inmate Arita seeks compensatory and punitive damages.

---

[1] Rec. Doc. 15. Some information included, as well as defenses raised herein was mentioned in the defendants' Motion for Partial Summary Judgment.

## II.  THE LAW ON SUMMARY JUDGMENT

FRCP Rule 56(e) provides in pertinent part as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In <u>Celotex Corp. v. Catrett</u>[2] the Supreme Court held that the above language mandates summary judgment for judicial efficiency in situations where the adverse complainant shows insufficient evidence on any element essential to his case and on which complainant bears the burden of proof at trial.

The appearing defendants in this matter satisfy their initial responsibility in moving for summary judgment by informing the Court of the basis for their Motion through the Statement of Undisputed Facts and from the exhibits, which are:

| | |
|---|---|
| Exhibit A: | Certified Copies of Joseph Hooker's Disciplinary and Unusual Occurrence Reports from November 29, 2012 |
| Exhibit B: | Pictures Taken of Plaintiff on November 29, 2012[3] |
| Exhibit C: | Camp J, Gator Unit Chemical Agent Log Book for November 29, 2012 |
| Exhibit D: | Time Clock Cards for November 29, 2012 |
| Exhibit E: | Affidavit of Jimmy Smith |
| Exhibit F: | Dr. Paul Toce's Affidavit and Expert Report |

---

[2] 106 S. Ct. 2548 (1986).

[3] See Rec. Docs. 18 – 19, 22 & 24. Pictures that were taken of plaintiff on November 29, 2012 were filed under seal and hard copies were filed conventionally at the District Court in May 2014. The records will be sent to plaintiff by U.S. Mail.

Exhibit G:                Affidavit of Joseph Hooker

Exhibits H – O:          Plaintiff's Medical Records Related to His Back, Hands, Thumb, Knees and Elbow from 2004 – 2012[4]

Exhibit P:                Plaintiff's Medical Records from November 29, 2012 – December 31, 2012

## III.  MAJOR JOSEPH HOOKER AND COLONEL JIMMY SMITH SHOULD BE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE AND DELIBERATE INDIFFERENCE

Major Joseph Hooker and Colonel Jimmy Smith should be entitled to qualified immunity on plaintiff's claims of excessive force and deliberate indifference.

### A.    The Law on Qualified Immunity

*Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably.*[5] *Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.*[6]

Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law."[7] *It also shields an officer from personal liability when the officer reasonably believes that his or her conduct complies with*

---

[4] See Rec. Docs 49 & 52-53. Exhibits H – P  (Exhibit P was labeled Exhibit R) were filed under seal on April 17, 2015. The records will be sent to plaintiff by U.S. Mail.

[5] Pearson v. Callahan, 129 S.Ct. 808, 815-816, 172 L.Ed.2d 565 (2009), citing Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982).

[6] Pearson, 129 S.Ct. at 815-816.

[7] Malley v. Briggs, 106 S.Ct. 1092, 1096 (1986).

*the law*.[8] The qualified immunity inquiry turns on the objective legal reasonableness of the government official's action, assessed in light of legal rules that were clearly established at the time the action was taken.[9]

### B.    Substantive Law on Excessive Force

The pertinent 8th Amendment proscription is only against "punishments" that are "cruel and unusual".[10] The core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner, in violation of the Eighth Amendment prohibition against cruel and unusual punishment, is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.[11]

### C.    Substantive Law On Failure to Protect and/or Insure Safety

The Constitution "does not mandate comfortable prisons," [12] but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment".[13] Under the Eighth Amendment, prison officials have a general duty to protect inmates from harm and take reasonable measures to protect their safety.[14] However, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm.[15] The Eighth Amendment mandates "reasonable safety," not "absolute safety", and prison officials are not liable when they make good faith efforts in

---

[8] Pearson, 129 S.Ct. at 823.
[9] Pearson, 129 S.Ct. at 823, citing Wilson v. Layne, 119 S.Ct. 1692 (1999).
[10] Baldwin v. Stalder, 137 F.3d 836, 838 (5th Cir. 1998).
[11] Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010).
[12] Rhodes v. Chapman, 101 S.Ct. 2392 (1981).
[13] Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993).

assessing potential danger.[16]  Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind", constitutes conduct proscribed by the Eighth Amendment.[17]

### 1. Plaintiff's Claim of Excessive Force and Deliberate Indifference Against Major Joseph Hooker

Plaintiff alleges Major Joseph Hooker subjected him to excessive force on the Gator 3 right tier of Camp J on November 29, 2012 by releasing "large amounts" of chemical agent into his cell without provocation, 4 different times, slapping him and twisting his hand. (Plaintiff fails indicate where on his body Hooker allegedly slapped him or specify which hand Hooker allegedly twisted in the complaint).  Inmate Arita also alleges Hooker told tactical team members to beat him, that the tactical team violently beat him by shocking him, punching him, kneeing him in the head, kicking and stomping on him for 15 – 20 minutes and also that Hooker stood by and watched.[18]

Plaintiff was housed in Cell No. 9 on the Gator 3 right tier of Camp J on November 29, 2012. At approximately 8:25 a.m. on November 29, 2012, he began to cause a disturbance on the tier by racking down and throwing objects out of his cell.  A cell extraction was being conducted on offender Michael Steward, who was in cell #7 of the same unit, while plaintiff was creating the disturbance.[19]

Major Hooker gave plaintiff several orders to stop the disruption and he refused all orders given. The cell extraction was then conducted on Steward. Major Hooker then exited the tier and

---

[14] Farmer v. Brennan, 114 S.Ct. 1970 (1994).
[15] Id.
[16] Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998).
[17] Estelle v. Gamble, 97 S.Ct. 285 (1976).
[18] Rec. Doc. 1, pp. 4-7.

obtained a can of Sabre Red Phantom Chemical agent. Hooker gave plaintiff several more direct verbal orders to cease the disturbance he was creating when he returned to the front of plaintiff's cell. Again, inmate Arita refused all orders given.[20]

At that point, Major Hooker administered a one second burst of chemical agent into the cell. Can B of Sabre Red, which is the can of mace Major Hooker retrieved from the gas locker on November 29, 2012, weighed 4.0 ounces before it was used. Can B weighed 3.7 ounces after Hooker released the chemical agent into the plaintiff's cell on the aforementioned date.[21] Three tenths of an ounce of mace was used by Hooker in a good faith effort to try to gain control of the plaintiff.

Hooker ordered plaintiff to cease the disturbance he was creating after chemical agent was released. Plaintiff refused all orders given and picked up a stack of papers and threw them at the cell bars. The situation created by the plaintiff necessitated some degree of force, as attempts to gain his compliance through direct verbal orders and chemical agents were unsuccessful. Since plaintiff failed to comply with direct verbal orders to cease the disturbance he was creating, Major Hooker ordered the cell entry team to remove him from his cell.[22] Plaintiff was written up for defiance and aggravated disobedience as a result of his behavior.[23]

The only force that was used on plaintiff on November 29, 2012 was that which was necessary to gain control of the situation after he disregarded Major Hooker's direct verbal orders to stop the disturbance he was creating.

---

[19] Exhibits A and G.
[20] Id.
[21] Exhibits C and I.
[22] Exhibits A and G.
[23] Exhibit A.

Contrary to the allegations asserted by plaintiff in the complaint, Major Hooker did not release three tenths of an ounce of chemical agent into his cell on November 29, 2012 without provocation. As evidenced by the gas logs, Hooker likewise did not subject him to excessive force by repeatedly releasing large amounts of chemical agent in to his cell. Additionally, Hooker did not slap plaintiff or twist his hand while he was in restraints nor did he stand by and watch or laugh while cell entry team members allegedly beat him on November 29, 2012. Finally, Major Hooker did not direct cell entry team members to beat plaintiff.

*The objective evidence in this case rebuts a finding of excessive force. Specifically, the medical record and pictures that were taken of plaintiff at the infirmary on November 29, 2012 show that with the exception of a minor abrasion on his thumb, he did not sustain any injuries.*[24] In the absence of a physical injury, the only inference that can be drawn is that the force that was used on plaintiff on November 29, 2012, was used in a good faith effort to maintain and restore discipline.

Major Joseph Hooker should be entitled to qualified immunity on the claims asserted against him in this case.

### 2.    Plaintiff's Claim of Deliberate Indifference Against Colonel Jimmy Smith

The allegations asserted by inmate Arita against Colonel Jimmy Smith in the complaint are untrue. Colonel Smith was the ranking supervisor in charge of all of Camp J on November 29, 2012.

Plaintiff was housed on the Gator 3 right unit on November 29, 2012. The time clock records show that Colonel Smith made the following rounds: 1) Gator 3 left unit 7:20 a.m.; 2)

---

[24] Exhibits B, F & P.

7

Gator 3 right unit at 7:21 a.m.; 3) 7:23 a.m. on the Gator 4 left unit on November 29, 2012.[25] He did not return to the Gator 3 right unit until 12:37 p.m. Colonel Smith was not on the Gator 3 unit when the alleged events giving rise to the lawsuit took place at approximately 8:25 a.m.[26]

The claim of deliberate indifference that is asserted against Colonel Jimmy Smith in the within action fails to state a claim upon which relief can be granted, as Smith was not present when chemical agent was released into plaintiff's cell and inmate Arita was not subjected to excessive force on November 29, 2012. Accordingly, the deliberate indifference claim should be dismissed and Colonel Jimmy Smith should be entitled to qualified immunity.

### 3.    The Medical Evidence[27]

In the complaint, plaintiff alleges his right elbow was swollen, his left knee was injured and his back was "badly" injured as a result of allegedly being abused on November 29, 2012.

Plaintiff was examined at approximately 9:15 a.m. on November 29, 2012, at which time he complained of back, face, head discomfort, dizziness and neck pain. The examination of inmate Arita was unremarkable. His vital signs were stable, he was alert, ambulatory and he had no neurological symptoms. The medical examination revealed no significant injuries on plaintiff's person. He was given a follow-up appointment with a nurse practitioner. X-rays of inmate Arita's knee, neck, back, thorax and skull were taken. All of the x-rays were negative, with the exception of the x-ray of his back which showed degenerative disc disease with no fracture malalignment or spondylolisthesis.[28]

---

[25] Exhibit D.

[26] Exhibits D and E.

[27] Exhibits H - P.

[28] Exhibit C.

The medical evidence shows that plaintiff voiced no medical complaints related to alleged overexposure to chemical agent or that one of his hands had been twisted. Moreover, in the complaint, inmate Arita makes no allegations of injury relating to alleged exposure to large amounts of chemical agent "all about his face and body" and eyes.[29] Finally, plaintiff fails to specify where on his body he was allegedly slapped, and there is no evidence, medical or otherwise, to support that allegation.

Pictures taken of plaintiff on November 29, 2012 show he had an acute minor abrasion on his left thumb and that he had old wounds, none of which were acute, on his back and buttocks.[30]

At approximately 5:43 on November 30, 2012, plaintiff was examined for complaints of a swollen right elbow he was barely able to move, severe pain in his left knee he could barely put weight on, that his lower back was reinjured, that he could barely stand up straight or bend his back and that he was in severe pain as result of the cell entry that occurred on November 29, 2012. His vitals were within normal limits, he had moderate edema on his right elbow with mild discoloration noted. There was mild edema with no discoloration on his left knee. No edema, spasms or discoloration was noted on his back. He received a prescription for Naproxen.

Inmate Arita has arthritis, which is a degenerative disease, in his back. He has received medical treatment on his back since as early as September 1, 2004.[31] MRI's that were taken of his back on June 19, 2008 and September 15, 2009 revealed degenerative changes.[32] Also,

---

[29] Rec. Doc. 1, pp. 5 - 6.
[30] Exhibit H.
[31] Exhibits H, I, J, K, L, M, N & O.
[32] Exhibits I & M

plaintiff received medical treatment on his knees,[33] head,[34] hands[35] and elbow before November 29, 2012.

Plaintiff was in his cell from the time he left the infirmary at approximately 10:10 a.m. on November 29, 2012 until he received medical evaluation at approximately 5:43 am on November 30, 2012. The picture that was taken of inmate Arita's elbows and knees at the infirmary on November 29, 2012 reveals no redness and/or injury. There exists no medical evidence that he reinjured his back on the aforementioned date.

On December 4, 2012, plaintiff was examined for complaints of discomfort and severe pain in his butt bone and severe pain in his left shoulder since November 29, 2012. His vitals were within normal limits, he was ambulatory without distress, no deformities or discoloration was found on his extremities. Plaintiff would not let the medical professional check his spine. He received a 3 day supply of Ibuprofen.

Inmate Arita complained of severe complications, difficulty and pain in his left knee, left shoulder, blistered skin from chemical agent and pain in his butt to the extent that he could not sit and lay down at approximately 8:45 a.m. on December 10, 2012. Plaintiff was ambulatory and alert during the examination. There were no significant signs of trauma or distress. The examination revealed no obvious deformity, no sign of skin irritations. He also had good flexion and extension in both lower extremities and lumbar spine.

He was seen in the clinic at approximately 12:35 p.m. on December 10, 2012, at which time he complained of low back pain and buttocks pain post "kick." Plaintiff walked without a

---

[33] Exhibit H & O.
[34] Exhibit K.
[35] Exhibits H, I, J, K, L, M & O.

limp, moved easily in the chair without complaints of low back pain. He had good lumbar spine range of motion with no specific points of tenderness.

In Dr. Paul Toce is the defendants' medical expert in this case. In Dr. Toce's medical opinion, plaintiff was not subjected to excessive force on November 29, 2012.[36]

### 4.     The Photographs of Plaintiff Taken on November 29, 2012[37]

In the complaint, plaintiff alleges the E.M.T. who took pictures of him at the infirmary avoided taking photographs of his face and only took two pictures of the top of his head. That statement is clearly untrue. Photographs of his entire body, from his head to his feet, were taken on November 29, 2012.

Plaintiff also alleges the photographer failed to take pictures of the right side of his face, which was swollen. He also alleges pictures of his eye, which was almost completely shut, were not taken. Again, the photograph reveals that the right side of plaintiff's face is not swollen and his eyes are closed, not shut from allegedly being hit.

Pictures taken of plaintiff on November 29, 2012 show he had an acute minor abrasion on his left thumb and that he had old wounds, none of which were acute, on his back and buttocks.[38] The photographs rebut a finding of excessive force or deliberate indifference.

### 5.     Affidavits

*Tactical team members have not been served. The section is included herein to bring to the Court's attention to the inconsistencies with plaintiff's and the offender witnesses' alleged version of events.*

---

[36] Exhibit F.
[37] Exhibit B.
[38] Exhibit H.

11

Plaintiff submitted an affidavit, along with statements from Phillip Jelks (DOC #485250), Vidale Tasby (DOC #330329), Rickey Evans and Kelvin Stewart, in support of his opposition to the defendants' Motion for Partial Summary Judgment.[39]

In his affidavit, Phillip Jelks indicates plaintiff was bleeding from his mouth, wrist and head area when he allegedly saw tactical team members drag him into the Gator 3 lobby.[40] According to Vidale Tasby, plaintiff's arms, mouth and head were bloody after the alleged incident.[41] Ricky Evans indicates plaintiff was beaten, "For a considerable length of time," in his statement.[42] The statements directly contradict, not just the medical evidence and the pictures, but also plaintiff's assertion that the officers did not leave any visible marks or injuries when he was allegedly abused on November 29, 2012.[43]

**6. There Exists No Genuine Issue of Material Fact with Respect to the Excessive Force and Deliberate Indifference Claims**

A court may only grant summary judgment if there is no genuine issue of material fact.[44]

A necessary element of the excessive force claim is the proof of injury resulting from the use of force.[45] The extent of injury suffered is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.[46] Also, the extent of injury may also provide some indication of the amount of force applied.

There is no evidence in the record sufficient to create a genuine dispute for trial as to whether Major Joseph Hooker subjected the plaintiff to an excessive use of force by releasing

---

[39] Rec. Doc. 29-3.
[40] Rec. Doc. 29-3,  Exhibit 3.
[41] Id., Exhibit 4.
[42] Id., Exhibit 5.
[43] Id., Exhibit 2.
[44] Federal Rules of Civil Procedure Rule 56.
[45] Knight v. Caldwell, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied,* 507 U.S. 926, 113 S.Ct. 1298 (1993).
[46] Wilkins v. Gaddy, 130 S.Ct. 1178.

large amounts of chemical agent into his cell, by slapping him or by twisting his hand on November 29, 2012. There likewise exists no genuine dispute for trial as to whether Major Hooker was deliberately indifference to inmate Arita's safety. Finally, there is no evidence in the record that Colonel Jimmy Smith failed to intervene on plaintiff's behalf because he was not present when chemical agent was released and plaintiff was not subjected to excessive force.

In light of the fact that the medical evidence, gas log, photographs of plaintiff and the defendants' accounts rebut the allegations asserted in the lawsuit, summary judgment should be granted in favor of the defendants.

## IV.    CONCLUSION

For the reasons stated above, the defendants' Cross Motion for Summary Judgment should be granted and the plaintiff's complaint dismissed.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

BY:    s/ Stacey Johnson
Stacey Johnson
Bar Roll No. 27331
Assistant Attorney General

Louisiana Dept. of Justice
Litigation Division
1885 N. 3rd Street, 4th Floor
P.O. Box 94005
Baton Rouge, LA 70802
Telephone: (225) 326-6402
Facsimile: (225) 326-6495
Johnsonst@ag.state.la.us

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 24, 2015, a copy of the foregoing Memorandum in Support of Cross Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system. I also certify that I have mailed by United States Postal Service this filing to the following non-CM/ECF participant:

Theodore Arita, DOC #422864
Louisiana State Penitentiary
Angola, LA  70712

<u>s/ Stacey Johnson</u>
Stacey Johnson # 27331
Attorney for Defendants
