# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF LOUISIANA

THEODORE ARITA (#422864)       CIVIL ACTION

VERSUS       NO. 14-116-BAJ-SCR

JOSEPH HOOKER, ET AL       MAGISTRATE JUDGE RIEDLINGER

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

## AFFIDAVIT

**BEFORE ME,** the undersigned Notary, personally came and appeared

### RHONDA Z. WELDON

who, after being first duly sworn, did depose and say that:

She is employed as a Paralegal for the Department of Public Safety and Corrections, Legal Services, Office of the Secretary.

The attached pages are true and exact copies of the entire administrative proceedings, as maintained in the normal course of business by the Department of Public Safety and Corrections, regarding **ADMINISTRATIVE REMEDY PROCEDURE NO. LSP-2012-3740,** filed by Plaintiff, **THEODORE ARITA, DOC #422864,** in connection with the above-captioned matter.



STATE'S
EXHIBIT
B

Blumberg No. 5138

The above is true and correct to the best of her information and belief.

_RHONDA Z. WELDON_

**SWORN TO AND SUBSCRIBED** before me, Notary, on this 15th day of April,

2014, at Baton Rouge, Louisiana.

JONATHAN R. VINING
NOTARY PUBLIC
State of Louisiana
LA Bar #30781
My Commission expires at death

2

# LSP
# Backlog Notification

TO: <u>ARITA, THEODORE 422864</u>          <u>CAMP J</u>
      Offender Name and Number          Living Unit

RE: LSP-2012-3740          Received Date: 12/04/2012

The Administrative Remedy Procedure for adult inmates allows for the backlogging of multiple requests, therefore, your first request will be accepted and handled. The others will be logged and set aside for handling at such time as the current request in the system has been exhausted at the 2nd Step or your time limits have elapsed at Step 1.

You currently have an ARP(s) in the system. The ARP received today, Case Number LSP-2012-3740 will be processed following the above guidelines. If you wish to have this ARP handled immediately, you may withdraw all pending ARPs.

## ADMINISTRATIVE REMEDY PROCEDURE & PROPERTY CLAIMS

## INPUT SCREEN

CASE NUMBER: LSP-2012-3740
EVACUEE:

DOC #: 422864      BACKLOG:
LAST NAME: ARITA         FIRST NAME: THEODORE
RECORD TYPE: A      SUBJECT CODE: 0701 - USE OF PHYSICAL FORCE
INCIDENT DATE: 11/29/12   SUBJECT TYPE :
LSP Only
LSP RESPONDENT: Camp J Warden

LSP HOUSING: CAMP J

|          | DATE RECEIVED | ACCEPTED DATE | DISPOSITION DATE | DISPOSITION CODE |
|----------|---------------|---------------|------------------|------------------|
| STEP 1:  | 12/04/2012    | 08/02/2013    | 10/25/2013       | 02-Denied        |
| STEP 2:  | 11/22/2013    | 11/22/2013    | 01/10/2014       | 02-Denied        |

COMPLAINT: FINAL  : OFFENDER STATES HE WAS GASED BY MAJOR HOOKER WITH A
CHEMICAL AGENT THEN BEAT BY THE TACT TEAM AFTER BEING PLACED IN RESTRAINTS
IF REJECTED REASON:

FILED SUIT:    DATE FILED:
EMPLOYEE NUMBER:  21 - Swaantje

12/04/2012

12/04/2012

CORRECTIONS SERVICES
OFFENDERS RELIEF REQUEST FORM

### CASE NUMBER: LSP-2012 -3740

TO:  <u>THEODORE ARITA 422864</u>              <u>J GAR 2/L</u>
     Offender's Name and Number            Living Quarters

<u>11/29/12</u>
Date of Incident

X              ACCEPTED:  This request comes to you from the Wardens Office.  A response will be
               issued within 40 days of this date.

               REJECTED:  Your request has been  rejected for the following reason(s):

<u>     08/02/2013     </u>                              <u>     .Trish Foster     </u>
          Date                                   Warden's Signature or Designee

THIS IS AN ADMINISTRATIVE REMEDY PROCEDURE

**BACKLOGGED ARP** RECEIVED

2012-3740
0701

TO: WARDEN,
BURL CAIN'S OFFICE

DEC 04 2012

Legal Programs Department

DATE: ___12/01/12___ J

DATE OF INCIDENT: ___11/29/12___

FROM: INMATE,
THEODORE ARITA #422864
CAMP-J, GAR. 1/RIGHT/#3

COMPLAINT AGAINST: ALL (JOHN DOE) –
TACTICAL TEAM MEMBERS DAY OF INCI-
DENT, MAJ. HOOKER, AND COL. SMITH.

COMPLAINT: On November 29, 2012, an Incident occured on camp-J, Gator 3/Right-tier where another Inmate (Micheal Stewart) was unjustly gased down by Maj. Hooker, apparently in retaliation for prior beef's that has been occureing between the two, after this Inmate was unjustly gased down, Maj. Hooker ordered the cell entry team to beat this Inmate up, who has a Known Mental Impairment problem, and has been continuously victimized by this same officer, a regular occurance fmwhich Micheal Stewart does not have the mental capobilities to have these acts of continuous retaliation addressed legally.

Dureing this Incident, the tier Sgt. Hunter, attempted to close everybodies boot doors, per orders by Maj. Hooker, apparently in efforts to prevent other witnessing Inmates from saying they heard, or saw what took place. AT this time, I respectfully requested that Sgt. Hunter please keep my boot door open because the chemical agents that Maj. Hooker just administered on the tier, not only effected Inmate Micheal Stewart, but the rest of the tier as well. We could not breath Inside these boot cells where there is very little to no ventilation.

At this point, Maj. Hooker over heard what was takeing place, and became exstremly upset. He began to run up, and down the tier proclaming, "Who's gone be next," who's in my motha-fucking business." Eventually stoping Infront of my cell where he specifically stated "You the one want to get-Into my business, here, shut the fuck up!" I attempted to explaine that we couldn't breath on this tier, but Maj. Hooker started administering large amounts of chemical agents into cell, all about my face, and body. Maj. Hooker thaN stated "Your next" and exited my boot after slaming the door closed on me, where I sat, suffering, unable to breath for atlease 15 to 20 minutes while I awaited the tacticle team to finish beating up Inmate Michael-Stewart, and so they could continue to proceed, and beat me up per orders of Maj. Hooker.

**RECEIVED**
DEC 04 2012
WARDEN'S OFFICE

(1).

Momments latter, my door was opened where the tacticbe team stood with Maj. Hooker, and Col. Smith standing in hallway, watching whole Incident. Maj. Hooker Specifically Stated, "beat his ass good, and try not to leave to marry visable Injuries, or Kill the sorry bitch." Col. Smith watched on, and did not attempt to correct what was about to take place, or what had already happend. At this time, I had approached the bars, and attempted to stick my hands through the tray hatch in efforts to be properly restrained inwhich I was completly Ignored by tacticbe team members, and Immediately repelled from bars by Maj. Hooker with more chemical agents that were again administered into my face.

I turned my back for a split secound, and grabed my face in response to being sprayed in the eyes with this gas, and my cell door opened where these group of tacticbe team members Immediatly, and with no provocation, began to violently beat me to the ground by Shocking me with an electric device/sheild, punching, kneeing, kicking, and Stomping me as I laid helplessly on the ground. I continued to state that I Surrender, and is not resisting. At the same time while I was being beaten, the Tac-Team members continuesly screamed "Stop resisting" in efforts to make it seem as if I was trying to fight numerous, fully armoured men. I was restrained Immediatly, but this beating continued to take place for approximately 15 to 20 minutes. Inwhich I was being mostly Shocked continuesly with this electric shock sheild as I layed fully restrained, and helplessly on the ground face first.

I was snatched up by these officers, but before being removed, one of these tac-team members (I know his face when I see him), grabed my head, and continuesly kneed me in my head where I lost conciousness for a couple seconds or so. when I opened my eyes, I was sitting upways in the doorway of my boot, where I specifically heard Maj. Hooker state "Hold his head up real quick", while pushing my face backwards, and continued to spray more chemical agents all about my eyes, face at close range. I was then draged off of tier. At that point, I could barely stand on my own power.

Once we arrived in lobby area of Gator unit, Maj. Hooker orderd these officers to put me Into the shower area of Gator 3/Left tier, face down on the ground. I was then brought into shower, and Immediately had my legs kicked from beneath me by one of these Tac-Team members. Once I hit the ground in shower, I was hit several times in my face, and head until I turned completly over on my stomach. Once I turned over, Maj. Hooker entered the shower area, and started to Slap me, and twisting my hand while I was still fully restrained, while he stated by screaming So the whole unit could hear him (evidently in efforts to make it seem- to the whole unit that he was Incharge, and In efforts to Intimidate other

(2).

Inmates in the process) "Are you gonna keep your fucking mouth shut, and stay out my fucking business", "Say yes sir." Maj. Hooker continuesly screamed this out, and the longer I wouldn't respond, the longer he assaulted me. After I had finally responded, he then released yet another burst of chemical agents to the side of my face, and exited the shower area.

I finally stood up in shower, and noticed several officers standing around watching the whole incident, and laughing. Most specifically Col. Smith who I heard state "Thats the one like to sue officers, he's gonna learn that no one will beleive a violent inmate over us." These officers continued to laugh, and make several statements where I could easily hear them before transportation finally brought me to hospital area.

I finally arrived at main hospital, there were one (John Doe) - E.M.T. Fat white guy who was wearing master Sgt. bars who immediately desplude a negative, and hasty attitude towards me. When I attempted to explain everything that was wronge with me, he rudely cut me off, and stated, - "Nothings wronge with him." I was clearly beaten up, and obviously injured at the time.

A (John Doe) Doctor eventually arrived where his attitude towards me was the same as the first E.M.T. guy. He took my vital signs, and asked me what was wronge. I started reporting all of my injurres inwhich I clearly noticed that he was not documenting none of it. I told him that I had a few blows to the head inwhich I was experienceing dizzyness, and that was the only injury he seemed to acknowledge (I guess because - if anything serious was to come up, it would have fallen back on him), The rest of my injuries appeared to be being ignored (I guess because this - doctor felt as if they would eventually heal on their own with no detections). I was only given X-rays on my head area. I dont think X-rays were taken of my right swollen elbow, Left kneee, badly injured back, - Buttbone (where I was kicked in my butt exstremly hard at one point by one of these Tac-Team members), and where I can not sit, or lay on my butt at all because of the pain.

I specifically asked the (John Doe) Doctor if pictures were going to be taken, inwhich he stated yes. I was brought into a room where another (John Doe) E.M.T., short, heavyset, whiteboy with glasses was takeing the pictures. He avoided takeing photos of my clearly injured face. He made me put my head down so he could take pictures of the

(3).

top of my head. The whole right side of my face was swollen, eye almost completly shut. I wrote L.S.P Investigative Services Immediately after Incident and requested photos be taken of Injuries while they were still visable, and medical treatment inwhich all request has been ignored thus far

This complaint will be forwarded to all necessary parties in event of future legal actions. These officers has a history of abuseing their authority by useing chemical agents, and Tacticbe Team as weapons against Inmates, and routinely justifying their actions by simply lieing by saying that the Inmate was hostile, causeing a disturbance, and refuseing all orders to come to bars to be restrained.

REMEDY : DESIRED

1). That Maj. Hooker, and Col. Smith be moved to another location in order to prevent further retaliation Inwhich has been a continueing problem by these two officers, or I be transfered to another Institution.

2) That I be seen Immediately by the appropriate medical personel for x-rays before Injuries heal on their own, and cause me further future probleems.

3). That I be compensated 1 million dollars in damages for all physical, and mental Injuries that I've substained, and still experienceing.

4). That I not be further retaliated on by none of Maj. Hookers, or Col. Smiths co-workers for these complaints, or future suits.

5). That all Incidents of Use of force be recorded by video recording rather it be chemical agents, or tacticbe team, to prevent unnecessy force.

Respectfully subt.

Theodore Arita

c/c filed

Theodore Arita #422804
Louisiana State Penitentiary
Angola, La, 70712

(4).

CASE NUMBER: LSP-2012-3740

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: ARITA, THEODORE 422864                    J GAR 2/L
                                              Living Quarters

Response to request dated 12/03/2012, received in this office on 12/04/2012

This request for remedy was received, logged, and set aside until today because you had other requests in the system at the time it was received. Your request for remedy was handled in this manner pursuant to the Administrative Remedy Procedure.

In your letter of complaint dated December 1, 2012, while housed at Camp J, you state that Major Hooker unjustly administered a chemical agent in your cell. Institutional records reflect on November 29, 2012, you were causing a disturbance during a cell extraction on another offender on your tier. Major Joseph Hooker then gave you several direct verbal order to cease the disturbance and you refused all orders given. Major Hooker then exited the tier and obtained a chemical agent and returned to your cell and gave you several more direct verbal orders to cease the disturbance, again you refused all orders given. Major Hooker then administered a one second burst of chemical agent into your cell and gave you several more direct verbal orders to cease the disturbance, again you refused all orders given. You then picked up a stack of papers and threw them at the cell bars. The cell extraction team then entered your cell and placed you in the shower. You were allowed to shower and given a clean jumpsuit. Institutional records reflect that you were seen by medical personnel on November 29, 2012. In accordance with Penitentiary Directive 09.002 the only force that was used was that which was necessary to gain control of the situation. Institutional records further reflect that supervisor made rounds on your unit, you could and should have brought this or any other complaint to their attention. No evidence is found to support your allegations.

Your request for Administrative Remedy is denied.

Prepared by: _____
                Robert Butler/AWII/lv

Approved by: _____
                Joe Lamartiniere/AWIII/tdb


_____10/25/13_____          _____
        Date                            Unit Head

**Instructions to Offender:** If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

(✓) I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_All officers are naturally going to deny their envolvements and no detailed investigations was conducted, no witnesses were interviewed. I am not satisfied with this decision._

10/31/13
Date

Inter Lo #422864
Offender's Signature  DOC#

CASE NUMBER: LSP-2012-3740

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: ARITA, THEODORE 422864                    J GAR 2/L
                                              Living Quarters

Response to request dated 12/03/2012, received in this office on 12/04/2012

This request for remedy was received, logged, and set aside until today because you had other requests in the system at the time it was received. Your request for remedy was handled in this manner pursuant to the Administrative Remedy Procedure.

In your letter of complaint dated December 1, 2012, while housed at Camp J, you state that Major Hooker unjustly administered a chemical agent in your cell. Institutional records reflect on November 29, 2012, you were causing a disturbance during a cell extraction on another offender on your tier. Major Joseph Hooker then gave you several direct verbal order to cease the disturbance and you refused all orders given. Major Hooker then exited the tier and obtained a chemical agent and returned to your cell and gave you several more direct verbal orders to cease the disturbance, again you refused all orders given. Major Hooker then administered a one second burst of chemical agent into your cell and gave you several more direct verbal orders to cease the disturbance, again you refused all orders given, You then picked up a stack of papers and threw them at the cell bars. The cell extraction team then entered your cell and placed you in the shower. You were allowed to shower and given a clean jumpsuit. Institutional records reflect that you were seen by medical personnel on November 29, 2012. In accordance with Penitentiary Directive 09.002 the only force that was used was that which was necessary to gain control of the situation. Institutional records further reflect that supervisor made rounds on your unit, you could and should have brought this or any other complaint to their attention. No evidence is found to support your allegations.

Your request for Administrative Remedy is denied.

Prepared by: _____
            Robert Butler/AWII/lv

Approved by: _____
            Joe Lamartiniere/AWII/tdb

10/25/13
_____          _____
            Date                                      Unit Head

Instructions to Offender:  If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( )  I am not satisfied with this response and wish to proceed to Step Two.

Reason:

_____

_____

_____

_____

_____          _____
              Date                                    Offender's Signature    DOC#

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

**CASE NUMBER:  LSP-2012-3740**

**SECOND STEP RESPONSE FORM**
**(HEADQUARTERS)**

TO: <u>ARITA, THEODORE    422864</u>                                            <u>LSP</u>
       Offender Name and Number                                                   Living Unit

Response to Request Dated 10/31/2013, Received in this Office on 11/22/2013:

Your request for an Administrative review of ARP# LSP-2012-3740 has been received.  A qualified
member of the Headquarters staff has reviewed your request in order to render a fair and impartial
response.

All pertinent documentation surrounding your request, including the unusual occurrence report,
statements provided by the security staff and your medical records have been reviewed.  None of the
documents reviewed support your allegations.  Through your own actions, staff was forced to use only the
amount of force necessary to bring you into compliance with the verbal orders issued to you by staff.  This
office concurs with staff's findings on this matter.  As such, no further investigation or administrative
intervention warranted.

Your request for Administrative Remedy is denied.


<u>01/10/14</u>                                                            <u>Secretary's Signature or His Designee</u>
            Date                                                       Secretary's Signature or His Designee

21

# CAMP-J DAILY POST ROSTER

**Team:** B          **Time Shift Change Completed:** 5:30 am          **Date:** 11/29/12

| | |
|---|---|
| **Warden:** Robert Butler | **Major:** Joseph Hooker |
| **Colonel:** Jimmy Smith | **Captain:** James Morris |
| **Lt. Colonel:** Kevin Groom | **Captain:** Donnell Sullivan |
| **Major:** Trent Barton | **Captain:** John Sanders |
| **Lieutenant:** Mark Laprairie | **Lieutenant:** Randall Stead |
| | **Lieutenant:** |

| | | | |
|---|---|---|---|
| **Gar 1:** | Damon Turner | **Cuda 1:** | Michael Simpson |
| **Gar 2:** | Earl Gordon | **Cuda 2:** | Damien Collins |
| **Gar 3:** | Hosea Borskey | **Cuda 3:** | Floyd Sims |
| **Gar 4:** | Delvin Turner | **Cuda 4:** | Gary Ricks |
| **Gar Hall:** | | **Cuda Hall:** | |
| **Shark 1:** | Kevin Norman | **Gator 1:** | Joshua Francois |
| **Shark 2:** | Toby Vitrano | **Gator 2:** | Cedric Ferguson |
| **Shark 3:** | Lennon Johnson | **Gator 3:** | Mason Hunter |
| **Shark 4:** | Eric Turner | **Gator 4:** | Dwayne Adams |
| **Shark Hall:** | | **Gator Hall:** | |
| **Patrol:** | Jamie Lachney | **Bass Gate:** | Lt. Mark Laprairie |
| **Clerk:** | Lisa Vines | **Bass Dorm:** | Closed |
| **Entrance Bldg:** | Sharon Hampton | **Tower 1:** | Patricia Seymore |
| **Kitchen:** | Lt. Randall Stead | **Tower 2:** | Closed |
| **Kitchen:** | Closed | **Tower 3:** | Closed |
| **Kitchen:** | Closed | **Tower 4:** | Closed |
| **Cellblock Escort:** | Capt. John Sanders | **Tower 5:** | Closed |
| **Lake Front:** | Closed | **Tower 6:** | Closed |
| **Dental Clinic:** | Closed | **Maintenance:** | Closed |
| **Dr. Clinic:** | Capt. James Morris | **Sally Port:** | Lenora Ellis |
| **Mental Health:** | Closed | **Roving Security:** | Jessica Holden |

**Absences**

David Voorhies (Work Comp)

Rose Wilson (LA)

Jerry Credit (Out Of Pocket MPE/D)

**Topics Discussed at Roll Call**

The shift was asked if they had a cell phone on them. Making sure that the orderlies are cleaning the units. Ensure that they are shaking down the assigned beds and cells. Ensure that they are following the dress code and contraband policy as to what they can bring to work with them. Ensure they are practicing basic security procedures. Complete paperwork properly.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | colspan="6" | **Officers Loaned** | |  | **Extras** | |
| | | Cp C | 1 | MPE | 0 | TU | 0 |  | Henry Parker loaned to Camp-D |
| **Shakedowns** | | Cp D | 1 | MPW | 0 | | |  | Enrico George loaned to Camp-C |
| Cells: | 5 | 13 | DR | 0 | TC | 0 | | | |

| | | |
|---|---|---|
| **Shakedowns** | | |
| Cells: | 5 | 13 |
| Bed-1 | 22 | |
| Bed-2 | 32 | |
| Bed-3 | 42 | |
| Bed-4 | 52 | |

**Officers Borrowed**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Camp C: Major Gauthier | 0 | MPE: Major Davis | 0 | TU: Lt. McDowell | 0 |
| Camp D: Major Scales | 0 | MPW: Capt. Hayes | 0 | Camp F: Lt. Savoy | 0 |
| Death Row: Lt. Hunt | 0 | TC: Lt. Murray | 0 | | |

**Supervisors assigned to this shift manning drop(s):**

| Supervisor's Name | Area Worked | Time Example (1:00PM to 4:00PM) |
|---|---|---|
| Lt. Mark Laprairie | Bass Gate | 5:15 am – 5:30 pm |
| Lt. Randall Stead | Kitchen | 5:15 am – 5:30 pm |
| Capt. John Sanders | Cellblock Escort | 5:15 am – 5:30 pm |
| Capt. James Morris | Dr. Clinic | 8:00 am – 4:00 pm |

**Supervisor's Signature:** _Major Joseph Hooker_

70

OFFICER NAME: _Sg Daniel Terry & Sg E Gonthers_   SHIFT _B-W_

DATE: _11-29-12_

| TIME | OFFICER ENTRY |
|------|---------------|
| 5:30 | made rounds on all 4 tiers + counted [illegible] 1 tier |
| 5:23 | Received 2 [illegible] of cell clutter + equipment 1 [illegible] 1 pair of sheets 1 [illegible] body 2 yard [illegible], 1 cell inspection [illegible] 1 legal + scribal [illegible] will kit, 2 jelly [illegible] jar [illegible] [illegible] + [illegible] perfume, 1 [illegible] [illegible] chewing, 1 paul rolls 1 blue [illegible], 1 [illegible] [illegible], 1 hand [illegible] 1 [illegible] [illegible] 1 [illegible] [illegible] + [illegible] [illegible] [illegible] + confiscated [illegible] 126 [illegible], 28 [illegible], 13 [illegible] tier 1 [illegible] |
| 5:34 | cleared count on 26, 11, 39, 12 1 tier |
| 5:48 | class [illegible] [illegible] [illegible] 85 |
| 6:00 | Am 1st PC [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] |
| 8:02 | made [illegible] on all [illegible] |
| 9:01 | [illegible] Sgt. Stay on unit with Canteen Shortages |
| 9:07 | made Rounds on all tiers |
| 9:58 | made Rounds on all tiers [illegible] cleared count 26, 11, 39, 12 1 tier |
| 10:33 | cleared count on unit [illegible] Canteen [illegible] 1889 8 [illegible] tier |
| 10:45 | Joel P [illegible] Jennifer Eller + class [illegible] |
| 12:03 | made Rounds on all tiers |
| 1:04 | recount count on all [illegible] Capt [illegible] [illegible] |
| 13:35 | made Round [illegible] on all unit |
| 2:00 | [illegible] 1 [illegible] [illegible] 360 899 made L [illegible] legal calls per orders of [illegible] [illegible] # 504-585-1413 [illegible] [illegible] [illegible] 225 663-2617 unknown [illegible] |

71

OFFICER NAME: _Sg Dawkins & Sg E Foster_    SHIFT: _B_

DATE: _11-29-12_

| TIME | OFFICER ENTRY |
|------|---------------|
| 2:30 | Officer Walter Evans #45838 completed phone call post orders (post orders) |
| | read log on unit + Pu R |
| | cleared count on 2/10, 1/3, 2/10, 1/12, 1 n/s, no beds not notified by sally port that officer + army not on count |
| 3:00 | made rounds - read C.A.s |
| 3:30 | 3rd C Adkinson Jr |
| | chow cart on unit 3 males Could Expire |
| | 190 relief off |
| 4:00 | made rounds on all Cells |
| 5:00 | read count on all cells |
| | relieved by team of all clear + rel |

Gar 1 + 2          Thursday          LT K. Cavalier
11-29-12           D-Team            Sgt J. Crest
5:30 pm Made rounds with B Team officer + Counted 2/10, 1/4, 2/10, 1/12 + 1 T/W B Beds on Unit + Received 1 Beeper #5, 1 Pair of Shear 2 sets of keys (J-26/J-88) 6 Large, 3 small + (J-30/J-92) 8 Large, 0 small + 2 sets of Keys in Gar 1 in Box (J-29/J-91) 3 Large, 0 small (J-28/J-90) 1 Large, 1 small Logbook Bedbook Post orders, Read + Understand, Posted Policie M S D S 2 Fully Charged Fire Extinguisher 1 Trans brusher # CD-0394 + 1 First Aid Kit with seal intact locked in Box. Temp 74  74  74  74 Counted 7 sets of waist Chain, 7 Black Boxa 8 Handcuffs, + 7 B/B Chain in Box + 1 Flex cuff       Con't

Gar 112

72

OFFICER NAME: LT. K Cavalier / Sgt. J. Credit   SHIFT D

DATE: 11-29-12   Thursday (cont)

| TIME | OFFICER ENTRY |
|------|---------------|
| 5:45p | Beeper Check (Good) |
| 6:00p | Made rounds on all tiers & Counted |
|  | Sundown Count of 2/10, 1/4, 2/10, 1/12 |
|  | + 1 T/W Cleared with Sallyport |
| 6:30p | Made rounds on all tiers all secure |
|  | (illegible) Made 10-2 |
| 7:10p | Cleared Count of 2/10, 1/4, 2/10, 1/12 |
|  | + 1 T/W Cleared with Sallyport |
| 7:25p | Made rounds on all tiers all secure |
|  | Temp 72 72 72 72 |
| 8:00p | Made rounds on all tiers & Counted |
|  | 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sally |
| 8:30p | Made rounds on all tiers all secure |
| 9:00p | Made rounds on all tiers & Counted |
|  | 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sally |
| 9:30p | Made rounds on all tiers all secure |
|  | Temp 72 72 72 72 |
|  | Maj Harris |
| 10:00p | Made rounds on all tiers & Counted |
|  | 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sly |
| 10:25p | 1 Shower orderly on Unit to clean up |
|  | Shookdown found Ø |
| 10:30p | Made rounds on all tiers all secure |
| 11:00p | Made rounds on all tiers & Counted |
|  | 2/10, 1/4, 2/10, 1/12 + 1 T/W + 1 orderly |
| 11:08p | 1 orderly off Unit + 1 Tier walker D Hughes |
|  | on Unit + 1 Tier walker off tier |
| 11:10p | Cleared Count with Sallyport |
| 11:30p | Made rounds on all tiers all secure |
|  | Temp 72 72 72 72 |
| 12:03a | Made rounds on all tiers & Counted |
|  | 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sally |
|  | (illegible) Made 10-2 |

OFFICER NAME: LT. K Cavalier / Sgt. J. Credit   SHIFT   D

DATE: 11-30-12                    Friday (Con't)

| TIME | OFFICER ENTRY |
|---|---|
| 1041 | Made rounds on all tiers & Counted 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sgt |
| 134a | Made rounds on all tiers all secure Temp 72° 72° 72° 72° |
| 204a | Made rounds on all tiers & Counted 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sgt |
| 234a | Made rounds on all tiers all secure |
| 304a | Made rounds on all tiers & Counted 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sgt |
| 331a | Made rounds on all tiers all secure Temp 72° 72° 72° 72° |
| 403a | Made rounds on all tiers & Counted 2/10, 1/4, 2/10, 1/12 + 1 T/W Cleared with Sgt |
| 433a | Made rounds on all tiers all secure |
| 504a | Made rounds on all tiers & Counted 2/10, 1/4, 2/10, 1/12 + 1 T/W all secure |
| 525a | Relieved By A-Team officers |

                                    Lt. K Cavalier

Sgt K Johnson | M | Sgt | L Sanders        A-Team
11/30/12      | 2/10 | 1/4 | 2/10 | 1/12

| 5:33A | Made rounds with D-team officers Counted & checked back doors 1/6 2/10 1/4 2/10 1/13 & 1 T/W. Relieved D-team officers of their duties & equipment. Received 1 desk top, 1 dead book, 2 evaluators, 1 buzzer, 1 pr shears, 1 transfpack, 2 fully charge fire extinguisher with pins, 1 first aid box with seal, post orders posted, policies read & understood by both officers, 2 sets of clock key, 2 sets of unit keys, 1 set of yard keys, 1 set of ... keys, 7 waist chains, 7 black ..., 7 pad lock & keys, 8 handcuffs, 7 B/10, 7 B/P chains, 1 flex cuff. Found in count ... |

HK (Mil)
Adm Seg

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**DISCIPLINARY REPORT**

INSTITUTION: | LSP

| | | | |
|---|---|---|---|
| 1. Name Of Inmate: Theodore Arita | 2. Number: # 422864 | 3. Date of Incident: 11-29-12 | 4. Time Of Incident: 8:25 am |
| 5. Place Of Incident: Gator 3 Right | 6. Job Assignment (Inmate): Extended Lockdown | | 7. Housing Assignment (Inmate): Gator 3 Right Cell # 9 |
| 8. Rule Violated: Defiance, Aggravated Disobedience | | 9. Rule Number: # 3 # 5 | |

10. Description Of Incident (Include all relevant information – "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side if necessary).

On the above date and approximate time offender Theodore Arita # 422864 began to cause a disturbance on Gator 3 Right (Cell # 9) tier by racking down and throwing objects out of his cell on the tier. A cell extraction was being conducted on offender Michael Steward # 119852 (Cell # 7) on the same tier. I Major Joseph Hooker gave offender Arita several orders to cease the disruption and he refused all orders given. The cell extraction was then conducted on offender Steward. I then exited the tier and obtained a can of Sabre Red Phantom Chemical Agent. I then returned to offender Aritas' cell and gave him several more direct verbal orders to cease the disruption and he again refused all orders given. I was then forced to administer a one second burst of chemical agent into offender Aritas' cell. I again ordered offender Arita to cease the disruption and he again refused all orders given. Offender Arita then picked up a stack of papers and threw them at the cell bars. The cell entry team had removed offender Steward from his cell and placed him

11. Inmate Placed In Adm. Seg.  ☒ Yes   ☐ No

12. Signature of reporting employee: | 13. Name, Title, Assignment (Print), Major Joseph Hooker Camp-J B-Team

14. Date of Report: 11-29-12 | 15. Time of Report: 12:00 pm | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature:

18. Plea by Inmate: ☒ Not Guilty  ☐ Guilty | 19. Verdict: ☐ Not Guilty  ☒ Guilty

20. Date of Hearing: 12-5-12 | 21. Counsel Substitute: DOC#: 1295?

22. Motions: No Motions

23. Reasons for Disposition:
☒ Report is clear and precise.  ☒ Lack of a credible defense/little or no defense.  ☐ Based on his statement.
☒ The officer's version is determined to be more credible than the inmate's.  ☐ Pled guilty/accepted guilty plea.
☐ Only defense is denying contents of report.  ☐ The inmate presented no evidence to refute the charges.
☒ The investigative officer's testimony was deemed more truthful and accurate than the inmate's.  ☐ Plea bargain.
☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
☐ Other

24. Reasons for Sentence:
☒ Seriousness of offense.  ☐ The need to protect the institution, employees, or other.
☐ Poor Conduct record. A total of _____ rule violations(s). A total of _____ Schedule B violations since _____
   A total of _____ # _____ rule violations since _____
☐ Other

25. Sentence: Loss 12 J/cs Cust    Suspended ☐ _____ Days    Imposed ☒

26. Sentence: 10 Days O.Sp Det    Suspended ☐ _____ Days    Imposed ☒

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER)
Rest
MEMBER   Jennifer Eller
         Donald Corbin

# LOUISIANA STATE PENITENTIARY
## ANGOLA, LOUISIANA

### ARP / PC STATEMENT

| Offender Name: | *Theodore Arita #422864* | ARP # | *L.S.P. 2012-3740* |
|---|---|---|---|
| Officer Name: | *Jimmy Smith, Colonel* | | |

STATEMENT:

*In reference to A.R.P. #2012-3740, I offer the following. I have reviewed offender Theodore Arita #422864 alleged allegations. I do not have any information pertaining to his alleged allegations. I was informed of an incident on Alligator unit, however I was unable to report to the unit due to other duties within the Camp.*

*This is for your information and handling....*

Employee Signature _____    Date:    *08/09/2013*

Form C-05-001-W-1
15 July 2011

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**
**UNUSUAL OCCURRENCE REPORT**
(Category A, B, C Incidents)

**INSTITUTION:** Louisiana State Penitentiary

| Name: Theodore Arita | Number: # 422864 | Dorm Or Cellblock: Gator 3 Right | Date Of Incident: 11/29/12 | Time Of Incident: Approx. 8:25 am |
|---|---|---|---|---|
| Location Of Incident: Gator 3 Right Cell #9 | | Witnesses: N/A | | |

**TYPE OF INCIDENT - CHECK APPROPRIATE BOXES**

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured in Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team/Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike – Individual
- ☐ Hunger Strike – Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation – Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Warden

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☐ Assault With No Significant Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser
  - ☒ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

\* Copy to Investigations

**DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)**

On the above date and approximate time offender Theodore Arita # 422864 began to cause a disturbance on Gator 3 Right (Cell # 9) tier by racking down and throwing objects out of his cell on the tier. A cell extraction was being conducted

Major Joseph Hooker

Date Completed  11-29-12

Time Completed  11:30 AM

| Name:<br>Theodore Arita | Number:<br># 422864 | Dorm or Cellblock:<br>Gator 3 Right | Date of Incident:<br>11/29/12 | Time of Incident:<br>8:25 am |
|---|---|---|---|---|
| Location of Incident:<br>Gator 3 Right Cell # 9 | | Witnesses:<br>N/A | | |

### (Description of Incident Continued)

on offender Michael Steward # 119852 (Cell # 7) on the same tier. I Major Joseph Hooker gave offender Arita several orders to cease the disruption and he refused all orders given. The cell extraction was then conducted on offender Steward. I then exited the tier and obtained a can of Sabre Red Phantom Chemical Agent. I then returned to offender Aritas' cell and gave him several more direct verbal orders to cease the disruption and he again refused all orders given. I was then forced to administer a one second burst of chemical agent into offender Aritas' cell. I again ordered offender Arita to cease the disruption and he again refused all orders given. Offender Arita then picked up a stack of papers and threw them at the cell bars. The cell entry team had removed offender Steward from his cell and placed him in the shower. I then ordered the cell entry team to extract offender Arita from his cell to be placed on Adm Seg. Offender Arita was then extracted from his cell. Both offenders Steward and Arita were given the opportunity to shower, given a clean jumpsuit, and was escorted by the cell extraction team to the REBTC for further evaluation and treatment. Col. Smith and Warden Butler were notified.

Major Joseph Hooker

Date Completed  11-29-12

Time Completed  11:30 Am

2

Form C-05-001-W-1
15 July 2011

## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
## CORRECTIONS SERVICES
## UNUSUAL OCCURRENCE REPORT
### (Category A, B, C Incidents)

### INSTITUTION: Louisiana State Penitentiary

| NAME<br>Theodore Arita | NUMBER<br>422864 | DORM OR CELLBLOCK<br>Gator 3/Right Cell 9 | DATE OF INCIDENT<br>11-29-12 | TIME OF INCIDENT<br>Approx 8:25 AM |
|---|---|---|---|---|
| LOCATION OF INCIDENT<br>Gator 3/Right Cell 9 | | WITNESSES<br>Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones | | |

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured In Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team / Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike - Individual
- ☐ Hunger Strike - Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation - Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Unit Head

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☐ Assault With No Significant Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser®
  - ☒ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

\* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and approx. time, I Lieutenant Eric Bernard was notified by Major Joseph Hooker that I

REPORTING OFFICER _____

DATE COMPLETED  11-29-12

TIME COMPLETED  12:45pm

**UOR/Page 2**

| NAME<br>Theodore Arita | NUMBER<br>422864 | DORM OR CELLBLOCK<br>Gator 3/Right Cell #9 | DATE OF INCIDENT<br>11-29-12 | TIME OF INCIDENT<br>Approx. 8:25 AM |
|---|---|---|---|---|
| LOCATION OF INCIDENT<br>Gator 3/Right Cell #9 | | WITNESSES: Captain Grady Gagnard, Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Sergeant Marcus Jones | | |

**DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)**

was needed for a cell extraction in cell #9 after completing the previous cell entry. Myself along with the extraction team members then went to Cell #9 where Offender Theodore Arita was being housed. Offender Arita was causing a disturbance by yelling, cursing, and throwing stacks of paper out of his cell. Captain Gagnard gave Offender Arita several sets of direct verbal orders to cease his disturbance and come to the bars to be restrained. Offender Steward refused all orders given. Captain Gagnard then ordered the electronic capture shield to be arched and the extraction team entered the cell. Upon entry, Offender Arita was pinned to the floor using the electronic capture shield. Offender Arita became very combative, kicking and punching at the extraction team members. Once Under control, I then applied restraints to Offender Arita. Offender Arita was then brought out of the cell, offered a shower which he refused, and sent to the Treatment Center for evaluation and possible treatment. Myself as well as the other extraction team members were seen by medical personnel at the Treatment Center and cleared with no injuries. Assistant Warden Joe Lamartiniere was notified of this incident. This is for your information and further handling.

Form C-05-001-W-1
15 July 2011

## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### CORRECTIONS SERVICES
### UNUSUAL OCCURRENCE REPORT
(Category A, B, C Incidents)

INSTITUTION: Louisiana State Penitentiary

| NAME<br>Theodore Arita | NUMBER<br>422864 | DORM OR CELLBLOCK<br>Gator 3/Right Cell 9 | DATE OF INCIDENT<br>11-29-12 | TIME OF INCIDENT<br>Approx 8:25 AM |
|---|---|---|---|---|
| LOCATION OF INCIDENT<br>Gator 3/Right Cell 9 | | WITNESSES<br>Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones | | |

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured In Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team / Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike - Individual
- ☐ Hunger Strike - Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation - Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Unit Head

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☐ Assault With No Significant Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser®
  - ☒ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

\* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and approx. time, I Lieutenant Peter Lolis was notified by Major Joseph Hooker that I was

REPORTING OFFICER

DATE COMPLETED    11-29-12

TIME COMPLETED    12:45 pm

UOR/Page 2

| NAME Theodore Arita | NUMBER 422864 | DORM OR CELLBLOCK Gator 3/Rtight Cell #9 | DATE OF INCIDENT 11-29-12 | TIME OF INCIDENT Approx. 8:25 AM |
|---|---|---|---|---|
| LOCATION OF INCIDENT Gator 3/Right Cell #9 | | WITNESSES Captain Grady Gagnard, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones | | |

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

needed for a cell extraction in cell #9 after completion of the previous cell extraction. yelling and causing a disturbance. Myself along with the extraction team members then went to Cell #9 where Offender Arita was housed. Offender Arita was causing a disturbance by yelling, cursing, and throwing stacks of paper out of the cell. Captain Gagnard gave Offender Arita several sets of direct verbal orders to cease his disturbance and come to the bars to be restrained. Offender Arita refused all orders given. Captain Gagnard then ordered the electronic capture shield to be arched and the extraction team entered the cell. Upon entry, I Lieutenant Lolis pinned Offender Arita to the floor using the electronic capture shield. Offender Arita became very combative, kicking and punching at the extraction team members. Once Under control, restraints were applied to Offender Arita. Offender Arita was then brought out of the cell, offered a shower which he refused, and sent to the Treatment Center for evaluation and possible treatment. Myself as well as the other extraction team members were seen by medical personnel at the Treatment Center and cleared with no injuries. Assistant Warden Joe Lamartiniere was notified of this incident. This is for your information and further handling.

11-29-12     12:45 pm

Form C-05-001-W-1
15 July 2011



### DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
### CORRECTIONS SERVICES
### UNUSUAL OCCURRENCE REPORT
### (Category A, B, C Incidents)

**INSTITUTION: Louisiana State Penitentiary**

| NAME<br>Theodore Arita | NUMBER<br>422864 | DORM OR CELLBLOCK<br>Gator 3/Right Cell 9 | DATE OF INCIDENT<br>11-29-12 | TIME OF INCIDENT<br>Approx 8:25 AM |
|---|---|---|---|---|

| LOCATION OF INCIDENT<br>Gator 3/Right Cell 9 | WITNESSES<br>Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones |
|---|---|

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured in Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team / Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class 1)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike - Individual
- ☐ Hunger Strike - Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation - Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Unit Head

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☐ Assault With No Significant Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser®
  - ☒ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

\* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and time, I Captain Grady Gagnard was notified by Major Joseph Hooker that I was needed

| REPORTING OFFICER | 11-29-12<br>DATE COMPLETED | 11:45 AM<br>TIME COMPLETED |
|---|---|---|

UOR/Page 2

| NAME | NUMBER | DORM OR CELLBLOCK | DATE OF INCIDENT | TIME OF INCIDENT |
|------|--------|-------------------|------------------|------------------|
| Theodore Arita | 422864 | Gator 3/Right Cell #9 | 11-29-12 | Approx. 8:25 AM |

| LOCATION OF INCIDENT | WITNESSES |
|----------------------|-----------|
| Gator 3/Right Cell #9 | Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones |

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

for a cell extraction in cell #9 after completion of the previous cell extraction. Myself along with the extraction team members then went to the cell #9 on Gator 3/Right where Offender Theodore Arita was being housed. Offender Arita was causing a disturbance by yelling, cursing , and throwing stacks of paper out of his cell. I then gave Offender Arita several direct verbal orders to cease his disturbance and come to the bars to be restrained. Offender Arita refused all orders given. I then ordered the electronic capture shield to be arched and the extraction team entered the cell. Upon entry, Offender Arita was pinned to the floor using the electronic capture shield. Offender Arita became very combative, kicking and punching at the extraction team members. Once Under control, restraints were applied to Offender Arita. Offender Arita was then brought out of the cell, offered a shower which he refused, and sent to the Treatment Center for evaluation and possible treatment. Myself as well as the other extraction team members were seen by medical personnel at the Treatment Center and cleared with no injuries. Assistant Warden Joe Lamartiniere was notified of this incident. This is for your information and further handling.

Grady Gagnard, Capt          11-29-12          11:45 AM

Form C-05-001-W-1
15 July 2011

## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
## CORRECTIONS SERVICES
## UNUSUAL OCCURRENCE REPORT
### (Category A, B, C Incidents)



### INSTITUTION: Louisiana State Penitentiary

| NAME<br>Theodore Arita | NUMBER<br>422864 | DORM OR CELLBLOCK<br>Gator 3/Right Cell 9 | DATE OF INCIDENT<br>11-29-12 | TIME OF INCIDENT<br>Approx 8:25 AM |
|---|---|---|---|---|
| LOCATION OF INCIDENT<br>Gator 3/Right Cell 9 | | WITNESSES<br>Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones | | |

### TYPE OF INCIDENT - CHECK APPROPRIATE BOXES

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured In Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team / Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other - Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike - Individual
- ☐ Hunger Strike - Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation - Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Unit Head

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☐ Assault With No Significant Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser®
  - ☒ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

\* Copy to Investigations

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

On the above date and approx. time, I Lieutenant Scott Kennedy was notified by Major Joseph Hooker that I

| REPORTING OFFICER | DATE COMPLETED<br>11-29-12 | TIME COMPLETED<br>12:45 pm |
|---|---|---|

UOR/Page 2

| NAME | NUMBER | DORM OR CELLBLOCK | DATE OF INCIDENT | TIME OF INCIDENT |
|------|--------|-------------------|------------------|------------------|
| Theodore Arita | 422864 | Gator 3/Right Cell #9 | 11-29-12 | Approx. 8:25 AM |

| LOCATION OF INCIDENT | WITNESSES |
|----------------------|-----------|
| Gator 3/ Right Cell #9 | Captain Grady Gagnard, Lieutenant Peter Lolls, Lieutenant Eric Bernard, Sergeant Marcus Jones |

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

was needed for a cell extraction in cell #9 after completion of the pervious cell extraction. #119852 in Cell #7 on Gator 3/Right yelling and causing a disturbance. Myself along with the extraction team members then went to Cell #9 where Offender Theodore Artia was being held. Offender Arita was causing a disturbance by yelling, cursing, and throwing stacks of paper out of his cell. Captain Gagnard gave Offender Arita several sets of direct verbal orders to cease his disturbance and come to the bars to be restrained. Offender Arita refused all orders given. Captain Gagnard then ordered the electronic capture shield to be arched and the extraction team entered the cell. Upon entry, Offender Arita was pinned to the floor using the electronic capture shield. Offender Arita became very combative, kicking and punching at the extraction team members. I then gave Offender Arita several strikes to the common peronial to gain compliance. Once Under control, restraints were applied to Offender Arita. Offender Arita was then brought out of the cell, offered a shower which he refused, and sent to the Treatment Center for evaluation and possible treatment. Myself as well as the other extraction team members were seen by medical personnel at the Treatment Center and cleared with no injuries. Assistant Warden Joe Lamartiniere was notified of this incident. This is for your information and further handling.

11-29-12                    12 45 pm

Form C-05-001-W-1
15 July 2011

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**
**UNUSUAL OCCURRENCE REPORT**
(Category A, B, C Incidents)

**INSTITUTION: Louisiana State Penitentiary**

| NAME<br>Theodore Arita | NUMBER<br>422864 | DORM OR CELLBLOCK<br>Gator 3/Right Cell 9 | DATE OF INCIDENT<br>11-29-12 | TIME OF INCIDENT<br>Approx 8:25 AM |
|---|---|---|---|---|

| LOCATION OF INCIDENT<br>Gator 3/Right Cell 9 | WITNESSES<br>Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard, Sergeant Marcus Jones |
|---|---|

**TYPE OF INCIDENT - CHECK APPROPRIATE BOXES**

**Category A Incidents:**
- ☐ Escape
- ☐ Death by other than natural causes
  - ☐ Accident
  - ☐ Violence
  - ☐ Suicide
  - ☐ Suspicious
  - ☐ Unknown
  - ☐ Unnatural
  - ☐ Execution
- ☐ Assault resulting in life threatening Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Staff Injured In Line of Duty
- ☐ Other
  - ☐ Significant Property Damage
  - ☐ Hostage Situation
  - ☐ Major Work Stoppage of Offenders
  - ☐ Employee Work Stoppage
  - ☐ Riot
  - ☐ Natural Disaster
  - ☐ Tact Team / Outside Assistance
  - ☐ Lockdown of all or part of facility
  - ☐ Hunger Strike of Entire Facility or Multiple Units
  - ☐ Large Scale Evacuation
  - ☐ Other – Determined by Unit Head

**Category B Incidents:**
- ☐ Escapee Apprehended
- ☐ Death Due to Natural Causes
  - ☐ Expected
  - ☐ Unexpected
- ☐ Gunshot - Shoot to disable (Class I)
- ☐ Assault with significant injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Attempted Suicide with Significant Injury
  - ☐ Self Mutilation with Significant Injury
- ☐ Hunger Strike - Individual
- ☐ Hunger Strike - Organized
- ☐ Use of Force w/Significant Injury
  - ☐ Lockdown of Limited Number of Offenders
- ☐ Significant Water/Power Outage
- ☐ Property Damage - Limited
- ☐ Evacuation - Limited
- ☐ Other – Employee Arrest
- ☐ Other - Determined by Unit Head

**Category C Incidents:**
- ☐ Agg. Sex Offense (Offender/Staff)*
- ☐ Agg. Sex Offense (Offender/Offender)*
- ☐ Staff/Civilian Sexual Misconduct*
- ☐ Gunshot - Warning Shot (Class II)
  - ☐ Self Defense - No Human Injury or Death
- ☐ Assault With No Significant Injury
  - ☐ Offender on Staff
  - ☐ Offender on Offender
  - ☐ With Weapon
  - ☐ Without Weapon
  - ☐ Throwing of Substances
- ☒ Use of Force
  - ☐ Immediate
  - ☐ Planned
  - ☒ Chemical Agents on Single Offender
  - ☐ Use of Taser®
  - ☒ Cell Entry Team (Elec. Shield)
  - ☐ Less Lethal Weapons
  - ☐ Restraints Used (Restraint Chair, 4 Point, etc.)
  - ☐ Staff on Offender
- ☐ Individual Hunger Strike

* Copy to Investigations

**DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)**

On the above date and approx. time, I Sergeant Marcus Jones was notified by Major Joseph Hooker that I

_Sgt. Marcus Jones_
REPORTING OFFICER

11/29/12
DATE COMPLETED

12:45 PM
TIME COMPLETED

UOR/Page 2

| NAME | NUMBER | DORM OR CELLBLOCK | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Theodore Arita | 422864 | Gator 3/Right Cell #9 | 11-29-12 | Approx. 8:25AM |

| LOCATION OF INCIDENT | WITNESSES |
|---|---|
| Gator 3/Right Cell #9 | Captain Grady Gagnard, Lieutenant Peter Lolis, Lieutenant Scott Kennedy, Lieutenant Eric Bernard |

### DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)

was needed for a cell extraction in cell #9 after completion of the previous cell extraction. Myself along with the extraction team members then went to Cell # 9 where Offender Theodore Arita was being housed. Offender Arita was causing a disturbance by yelling, cursing, and throwing stacks of paper at the extraction team members. Captain Gagnard gave Offender Arita several sets of direct verbal orders to cease his disturbance and come to the bars to be restrained. Offender Arita refused all orders given. Captain Gagnard then ordered the electronic capture shield to be arched and the extraction team entered the cell. Upon entry, Offender Arita was pinned to the floor using the electronic capture shield. Offender Arita became very combative, kicking and punching at the extraction team members. I then gave Offender Arita several strikes to the brachial plexus origin to gain compliance. Once Under control, restraints were applied to Offender Arita. Offender Arita was then brought out of the cell, offered a shower which he refused, and sent to the Treatment Center for evaluation and possible treatment. Myself as well as the other extraction team members were seen by medical personnel at the Treatment Center and cleared with no injuries. Assistant Warden Joe Lamartiniere was notified of this incident. This is for your information and further handling.

Sgt Marcus Jones

Marcus Jones

11/29/12

12:45 PM

LSP-08.002-A
July 2, 2004

## LOUISIANA STATE PENITENTIARY
## USE OF ELECTRONIC DEVICE DOCUMENTATION

| DATE: 11-29-12 | TIME: 8:25 am |
|---|---|
| **OFFENDER** | |
| Theodore Arita | 422864 |
| | |
| **BRIEF DESCRIPTION** | |

Offender Theodore Arita Refused to come to bars to be restrained after throwing water. Cell Extraction was order.

| **STAFF** | Capt. Cody Butler |
| | Lt. Peter Lollis |
| | Lt. Scott Kennedy, Lt. |
| Eric Bernard, Sgt. Marcus Jones | |

| **COMMENTS** | |
| | |
| | |
| | |
| | |

| **EMT OR OTHER MEDICAL PERSONNEL** | |
| Examined by Medical | |

This form is to be completed each time the Electronic Device is used. Unusual Occurrence Reports will also be prepared and attached. Distribution of reports is to follow the same method used to distribute UORs with an additional copy going to Medical Records.

**LOUISIANA STATE PENITENTIARY**
**ANGOLA, LOUISIANA**

**ARP / PC STATEMENT**

| Offender Name: | Theodore Arita #422864 | ARP # | 2012-3740 |
|---|---|---|---|
| Officer Name: | Mason Hunter, Master Sergeant | | |

| STATEMENT: |
|---|
| In reference to ARP#2012-3740. I offer the following. I did work Gator 3 unit on November 29, 2012, however I have no knowledge of this alleged incident. This is for your information and further handling. |

Employee Signature
Mason Hunter, Master Sergeant

Date 10/15/13

| May 3, 2013 | CHAPTER: SECURITY AND CONTROL | DIRECTIVE NO. 09.002 |
|---|---|---|
| **LOUISIANA STATE PENITENTIARY** | SUBJECT: USE OF FORCE | ACA STANDARD: 4-4084, 4-4084-1, 4-4090-92, 4-4173, 4-4199, 4-4200-04, 4-4206, 4-4281, 4-4399, 1-CTA-3A-16, 1-CTA-3A-17, -CTA-3A-19, 1-CTA-3A-20, 1-CTA-3A-23, 1-CTA-3A-24, 1-CTA-3B-08 |
| | REFERENCE: Department Regulation Nos. B-06-001, C-01-008, C-01-016, C-02-006A, C-03-003, C-05-001, C-05-001A; Penitentiary Directive Nos. 04.003, 09.007/B, 09.017, 09.021, 09.052, 13.019, 13.023,13.026 | |

PURPOSE: To provide guidelines to govern the use of force and its limitations and to describe prohibited activities. This policy is designed to assist employees in acting reasonably when confronted with situations requiring the use of force.

APPLICABILITY: All Louisiana State Penitentiary employees.

POLICY: It is the policy of Louisiana State Penitentiary that all reasonable steps be taken to minimize situations requiring the use of force by staff against offenders and to minimize the amount of force used in those situations. It is recognized, however, that force may be necessary to accomplish the mission and goals of the Department to provide for public safety, staff and offender safety, and the maintenance of stability within the institution. Employees will be provided with proper training and guidance in the use of force applications.

Procedures governing the use of force include both annual qualifications for staff likely to engage in activity that may involve the use of reasonable force and necessary certification under applicable regulating statutes for employees issued firearms or other security equipment. Security equipment utilized in use of force applications shall be in accordance with Penitentiary Directive No. 09.021 and Department Regulation No. C-01-008 and C-02-006. Only approved state-issued equipment will be used in the performance of official duties.

It is further the policy of Louisiana State Penitentiary that lethal weapons, less lethal weapons, electronic muscular disruption devices and restraints be used only by employees specifically trained in their use and when all available less drastic measures fail to accomplish control in handling group disturbances and subduing individuals. Said force employed shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

DEFINITIONS:

Electronic Muscular Disruption (EMD) Device: A device that utilizes electro-muscular disruption technology that disrupts the body's ability to communicate messages from the brain

Penitentiary Directive No. 09.002
May 3, 2013
Page 2 of 18

to the muscles, causing motor skill dysfunction. For the purpose of this regulation, EMD's include only the electronic capture shield and electronic restraint belt system. (The TASER® is also considered an EMD; however, refer to Department Regulation No. C-02-006A "Use of TASER®" for specific procedures regarding use of the TASER®.)

Excessive Force: Force is excessive when the resulting application of force is inappropriate to the circumstances either during an incident or in the aftermath of an incident.

Force: The application of a technique, action or device to compel a change in the actions of another person, which usually will result in compliance with a desired behavior, submission to authority or to deescalate a threatening behavior.

Force Continuum: Broad categories of force, in identifiable escalating/de-escalating stages of intensity, in response to an individual's actions. The categories are commonly identified as officer presence, verbal direction or command, soft empty-hand control, hand-held chemical spray or EMD devices, hard empty-hand control, batons and firearms. An individual's actions may be defined in broad categories including full compliance to commands, verbal uncooperativeness, passive resistance, active resistance, active aggression and aggravated active aggression (lethal force.)

Less Lethal Force: Defensive techniques or weapons that do not normally nor are intended, when properly applied, to cause death or serious bodily injury.

Less Lethal Weapons: Weapons designed to reduce the potential of causing serious physical injury or death. Use is restricted to situations where higher levels of force are unnecessary and lesser levels are inappropriate or ineffective. Less lethal weapons include:

1)   Chemical Agents and Munitions: Tear gas, mace spray or irritant dusts are chemical agents that cause irritation to the eyes, skin or respiratory system. Chemicals may be administered directly through a hand-held aerosol spray or at longer ranges by being fired or dispersed out of a launcher.

2)   Intermediate/Impact Weapons: Examples include batons and shields, which are available options in the force continuum.

Lethal Force: Any use of force reasonably calculated in the manner used to produce death or serious bodily injury.

Lethal Weapons: Any weapon reasonably calculated in the manner used, to produce death or serious bodily injury.

Necessary Force: Force used when all other options have been exhausted, unavailable or are not feasible.

Penitentiary Directive No. 09.002
May 3, 2013
Page 3 of 18

Reasonable Force: Only that force which is reasonable and necessary under the particular circumstances to protect the public, staff, offenders, or others from bodily injury or only after other reasonable alternatives have been exhausted or it is determined that such alternative action(s) would be ineffective under the circumstances.

Restraints: Mechanical, electronic or other devices used in the force continuum to aid in the restriction of an individual's bodily movement for security purposes. (See Health Care Policy No. HC-29 "Utilization of Restraints for Medical and Mental Health Management Orders" for information concerning the use of restraints for medical and mental health purposes.)

Severe Mental Health Illness: A chronic or acute mental illness that impairs the offender's ability to maintain safety of self and others and maintain activities of daily functioning.

Severely Developmentally Delayed: An intellectual disability that impairs the offender's ability to provide self-care or maintain their safety. In addition, this type of impairment may render the offender vulnerable to victimization by others.

See the attached Weapons List for items/devices/weapons authorized for use at LSP.

PROCEDURE:

A.    USE OF FORCE GUIDELINES

      1.    General Considerations:

            a.    The use of any type of force for punishment or reprisal is strictly prohibited.

            b.    Whenever possible, the determination to use force shall be made by the highest-ranking supervisor in the immediate area.

            c.    Whenever possible, force shall not be used against offenders with severe mental health illness (SMHI) or who are severely developmentally delayed (SDD) before appropriate Medical or Mental Health personnel can be called to the scene. The Mental Health Director shall be responsible for maintaining a list of offenders with SMHI and SDD, which shall be updated on a weekly basis or more often, if needed. This list shall be easily accessible to supervisory staff for use when needed.

            d.    Reasonable steps shall be taken to minimize the amount of force used.

Penitentiary Directive No. 09.002
May 3, 2013
Page 4 of 18

e.   Employees will not carry security equipment on their person unless authorized by the Warden or his designee. Restraining devices may be carried by supervisory personnel while on duty. Handcuffs must be worn in an approved attachable handcuff case.

f.   Individual units may maintain small amounts of security equipment in areas inaccessible to offenders.

g.   Assigned trip officers shall be authorized to use chemical agents and the ASP in order to prevent an escape or to stop a disturbance while escorting offenders outside institutional grounds.

h.   With the exception of extreme emergencies, firearms are not permitted inside a secure compound or area unless authorized by the Warden.

2.   Elements to Consider in the Review of Use of Force Incidents

a.   The extent of the injury suffered.

b.   The need for the application of force.

c.   The relationship between the need and the amount of force used.

d.   The threat reasonably perceived by the responsible supervisor

e.   Any efforts made to temper the severity of a forceful response.

3.   For Use of Less Lethal Force:

a.   Less lethal force is force, which normally causes neither death nor serious bodily injury.

b.   Physical force, chemical agents, EMDs, intermediate/impact weapons, or less lethal ammunitions and devices, and canine units may be used only in the following instances:

   1)   Prior to the use of lethal force:

      a)   To prevent the commission of a felony, including escape.

      b)   To prevent an act, which could result in death or serious bodily injury to one's self or to another person.

Penitentiary Directive No. 09.002
May 3, 2013
Page 5 of 18

    2)    To defend one's self or others against any physical assault.

    3)    To gain offender compliance when other less lethal force options within the force continuum have failed, are clearly inappropriate and/or ineffective.

    4)    To prevent commission of a misdemeanor.

    5)    To prevent serious damage to property.

    6)    To enforce institutional rules.

    7)    To prevent or quell a riot.

c.    The amount of physical force applied shall be appropriate to the amount of resistance. Once compliance starts, escalation of force stops.

4.    For Use of Lethal Force:

a.    Lethal force is force that in the manner used, is capable of causing death or serious physical injury.

b.    It may be used only as a last resort and then only in the following instances:

    1)    To prevent the commission of a felony, including escape.

    2)    To prevent an act, which could result in death or severe bodily harm to one's self or another person.

5.    For use of the following:

a.    Mechanical and Flex Cuff Restraints (see Penitentiary Directive No. 09.007/B).

b.    Extreme Restraints (see Penitentiary Directive No. 10.002).

c.    Chemical Agents, Intermediate/Impact Weapons and Other Less Lethal Weapons (see Section E below).

d.    Electronic Muscular Disruption Devices (see Section F below).

Case 3:14-cv-00116-BAJ-EWD    Document 76-1    06/08/15    Page 41 of 60

Penitentiary Directive No. 09.002
May 3, 2013
Page 6 of 18

        e.      Lethal Weapons (see Section B below).

        f.      Canine Units (see Section G below).

**B.**    **USE OF LETHAL WEAPONS**

1.    All staff, when assigned weapons, shall use the following procedure in the prevention of escapes and in situations described in Section A.4.

2.    Lethal weapons should be utilized only as a last resort and only as authorized herein.

3.    In the utilization of firearms, the following procedures shall be followed:

    a.    A verbal warning to cease actions (if feasible). In the case of an escape, this should occur when an unauthorized offender(s) gets within 10 feet of a perimeter fence.

    b.    Warning shot (if feasible) to ensure that the offender is absolutely aware of the seriousness and probable consequences of his actions.

        IMPORTANT NOTE: The only exception of the provisions in Section B, 3, a and b would be when the circumstances require immediate action to protect life or stop an escape in progress where a verbal warning or warning shot is not practical. Warning shots may not be fired where it is foreseeable that a member of the public may be endangered.

    c.    Shoot to disable (render offender incapable of continuing with action; which prompts the use of lethal force).

4.    Officers should be aware of escape attempts via aircraft.

    a.    Officers should contact the Control Center of the approach of low flying or unauthorized aircraft.

    b.    The Control Center shall advise appropriate tower officers of any expected aircraft.

    c.    If it is suspected an escape attempt is being made by an aircraft, the officer should gather as much information as possible as to the craft's identifying markings, number of occupants and possible number of offenders involved.

    d.    If an officer is fired upon by the aircraft or if the occupants are in the act of committing a felony, the officer may fire to protect himself, attempt to disable the craft, and to prevent its departure.

    e.    The Control Center and highest-ranking officer in the area shall notify the appropriate authorities of unapproved aircraft as soon as possible.

5.    **After Use**

    a.    When a weapon has been utilized, the affected individual(s) that suffered the wound shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

    b.    Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

    c.    In accordance with Department Regulation No. C-01-008 "Firearms and Weaponry Training," a Shooting Review Panel appointed by the Secretary shall review the circumstances surrounding each incident where an offender or other person is shot by departmental staff and shall make recommendations as necessary. The meetings shall occur at least quarterly but may occur on an incident-by-incident basis at the discretion of the Chief of Operations.

    d.    All instances in which lethal weapons are used shall be reported in accordance with Section F of this regulation.

6.    **Armed Duty Post**

    a.    With the exception of those offenders being transported outside the institution, armed duty posts shall be positioned in areas inaccessible to offenders. Armed guards shall position themselves at a minimum of seventy-five (75) feet from all offenders.

    b.    Armed escorts should exercise extreme caution during any movement of offenders in the course of outside trips and farm line operations. Mass movement of offenders from a security perimeter to another area requires armed escorts during hours of darkness or at time designated by the Warden.

    c.    Offenders are not allowed in the Armory or in areas where officers receive and/or return security equipment.

Penitentiary Directive No. 09.002
May 3, 2013
Page 8 of 18

C.    USE OF CHEMICAL AGENTS, INTERMEDIATE/IMPACT WEAPONS, EMD's AND OTHER LESS LETHAL WEAPONS

    1.    Chemical agents, intermediate/impact weapons, or less lethal munitions and devices shall not be used as punishment under any circumstances and may be used against an offender or a group of offenders only in the following circumstances:

        a.    To quell a riot and/or prevent loss of life, serious injury to person(s), and/or extensive destruction of property,

        b.    To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution, or

        c.    To regain control of the institution or a part of it.

    2.    The use of chemical agents, intermediate/impact weapons or less lethal munitions and devices is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

    3.    A determination for corporate or mass use of chemical agents, intermediate/impact weapons or less lethal munitions and devices shall be made by the Warden or designee. (who should be the highest-ranking supervisor on duty in the immediate area where the incident is occurring).

If the electronic capture shield (EMD) is to be used, the highest-ranking official on duty in the immediate area where the incident is occurring will designate the officer who will use the shield. Only officers who have been trained in the proper use of the electronic capture shield may be designated to use the shield.

    4.    Chemical agents, intermediate/impact weapons, EMD's or less lethal munitions and devices shall not:

        a.    Be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination for use under these circumstances, or against an individual offender, or a restrained offender (when circumstances are serious enough and deemed necessary) should be made by the highest-ranking supervisor on duty in the area where the incident is occurring.

Penitentiary Directive No. 09.002
May 3, 2013
Page 9 of 18

    b.    Be used on those offenders who are incapable of responding to the commands and orders being given to them by staff (e.g., during epileptic seizures, etc.).

    c.    Whenever possible under prevailing circumstances, be used against an offender who is assigned to a Mental Health Treatment Unit until a qualified medical or mental health worker is present and attempted to control the situation, unless it is necessary to prevent loss of life, serious injury to person(s), or extensive property damage.

        1)    The medical or mental health worker must respond, assess, and attempt an intervention prior to the use of a chemical agent or the Cell Entry Team.

        2)    If the intervention is not successful, the medical or mental health worker may authorize the use of chemical agents or the Cell Entry Team.

        3)    In such cases, the medical or mental health worker will remain present at the head of the tier to monitor the offender's behavior during the use of chemical agents or Cell Entry Team.

        4)    The medical or mental health worker will document the assessment and the success or failure of the intervention, time of incident, and follow-up treatment.

        5)    When immediate action is required, consultation between Mental Health Clinician and the Medical Director will occur as soon as reasonably possible, but no later than 72 hours to review the appropriateness of the action.

5.    When an offender or offenders are creating a disturbance, the officer on duty will attempt to handle the problem by ordering the offender(s) to cease the disturbance. If the offender(s) refuses and continues the disruptive behavior, the officer will then call his supervisor.

6.    When the supervisor arrives, he will take charge of the situation and then order the offender(s) to cease the disturbance. If the offender(s) refuses the order, he will then order the offender(s) to come to the bars so that he may be properly restrained and removed from his cell to be placed in administrative segregation or the appropriate area. This procedure also applies to offenders already housed in administrative segregation.

Penitentiary Directive No. 09.002
May 3, 2013
Page 10 of 18

7.  If these efforts fail to control the situation and the offender(s) continues the disruptive behavior which, in the opinion of the highest ranking security supervisor on duty in the immediate area where the incident is occurring, may lead to loss of life, serious injury to person(s), extensive destruction of property, or a serious situation which may jeopardize the safety, security and good order of the facility, the supervisor may then use only the minimum amount chemical agent necessary to subdue the offender(s).

8.  If the highest-ranking security supervisor on duty in the immediate area where the incident is occurring determines that chemical agent will be used, he will personally apply the chemical agent. Only the minimum amount necessary to control the situation will be used. It is the supervisor's responsibility to ensure that the chemical agent is not used as a form of punishment or on an offender(s) who is physically incapable of responding to commands being given to him.

9.  The offender(s) will then be given orders to come to the bars to be handcuffed. If the offender complies, appropriate restraints will be applied; he will be removed from the cell and offered a change of clothing and to shower. The offender(s) and affected staff will then be examined and treated, per established protocols, by an EMT or other qualified health care provider.

10. In the event that the use of chemical agent has no effect in controlling the situation as described above, the Control Center will be notified to assemble a cell entry team to subdue the offender(s).

11. The cell entry team leader will verbally inform the offender that the EMD will be used to subdue him.

12. The cell entry team leader or another trained officer designated by the team leader will arc/test the EMD in the offender's presence to show that electricity is being used. The team leader will again give the offender the opportunity to come to the bars to be restrained.

13. If the offender still refuses to come to the bars to be restrained, the team leader in charge of the situation will utilize the EMD and riot helmet, or designate another qualified officer to do the same. The on/off switch will be placed in the "on" position, and the cell entry team will enter the cell.

14. After the team has entered the cell, the officer utilizing the EMD and riot helmet will approach the offender and place the shield upon him. Always use the minimum force necessary to control the situation.

Penitentiary Directive No. 09.002
May 3, 2013
Page 11 of 18

15.  After the burst of electricity from the EMD has been administered, maintain cover with the shield. Have the offender move or physically move the offender to be restrained. If the offender physically resists, another burst of electricity may be applied with the electronic device. While the offender is being restrained, maintain cover with the shield. This procedure may be repeated only if necessary. The offender(s) will then be examined and treated, per established protocols, by an EMT or other qualified health care provider. Only minimum force will be used.

16.  The only person authorized to use chemical agent or to order the cell to be entered to subdue an offender(s) is the highest-ranking security supervisor on duty in the immediate area where the incident is occurring. Under no circumstances will an officer or officers use chemical agents, intermediate/impact weapons, or less lethal munitions and devices to subdue an offender(s) without the supervisor being present.

17.  ASP

    a.  On approval by the Warden, security supervisors of segregated areas shall be authorized to use the ASP (expandable tactical baton) in the performance of assigned duties. The ASP shall be stored in a proper storage compartment until such time as use is required. The ASP shall be inventoried.

    b.  Trip officers shall be authorized to carry the ASP while escorting offenders outside the institution. The ASP shall be signed out from the Armory as part of regular security equipment issue.

    c.  Only those staff who have been properly trained and certified shall be permitted to use the ASP.

18.  After Use

    1.  When chemical agents, intermediate/impact weapons or less lethal munitions and devices have been used

        a.  Affected individuals will be permitted to wash their face, eyes or other exposed skin areas, as soon as possible after the situation has been brought under control, and the individual will be examined by qualified medical personnel.

        b.  Staff may be referred to medical personnel as appropriate based on the circumstances.

Penitentiary Directive No. 09.002
May 3, 2013
Page 12 of 18

    2.    All instances in which chemical agents, intermediate/impact weapons or less lethal munitions or devices are used shall be reported in accordance with Section F.

D.    USE OF ELECTRONIC MUSCULAR DISRUPTION DEVICES (EMD's)

    1.    For the purpose of this Section, EMD's shall include only the electronic capture shield and electronic restraint belt system. (Refer to Department Regulation No. C-02-006A "Use of Taser®" for specific procedures regarding use of the Taser®.)

    The use of the electronic capture shield is authorized for use at LSP as described in Section C, 10-16.

    2.    EMD's shall not:

    a.    Be used as punishment under any circumstances;

    b.    Be used continuously and unjustifiably used against an offender;

    c.    Be used on those offenders who are incapable of responding to the commands and orders being given to them by the staff (e.g. during epileptic seizures, etc.)

    d.    Be used against any individual known to have been exposed or subjected to chemical agents containing flammable substances or any other product(s) using a potentially flammable propellant until a minimum of five minutes has passed allowing for evaporation of the propellant or unless the individual has completed the de-contamination process required after such exposure;

    e.    Be used around known sources of flammable gases, liquids or solids;

    f.    Whenever possible under prevailing circumstances, be used against offenders assigned to an area designated as a Mental Health Treatment Unit until a qualified medical or mental health worker is present and has attempted to control the situation unless it is necessary to prevent loss of life, serious injury to person(s) or extensive property damage.

    3.    EMD's may be used against an offender or a group of offenders only in the following circumstances:

    a.    To quell a riot and/or prevent loss of life, serious injury to person(s) and/or extensive destruction of property;

Penitentiary Directive No. 09.002
May 3, 2013
Page 13 of 18

b. To quell a disturbance that could lead to a serious situation which may jeopardize the safety, security and good order of the institution; or

c. To regain-control of the institution or part of it.

4. The use of EMD's is considered a use of force. When used, only the minimum amount of force necessary to control the situation shall be used. Any excessive use or unauthorized use will result in disciplinary action against the employee who does so.

5. Electronic Capture Shield

The electronic capture shield shall not be used on those offenders who remain passive in their cells without causing a disturbance or becoming hostile unless the offender continuously defies orders to come to the bars of the cell. A determination to use the electronic capture shield under these circumstances, or against an individual offender, shall be made by the highest-ranking supervisor on duty in the area where the incident is occurring.

6. Electronic Restraint Belt

a. Use of the electronic restraint belt shall be made by a designated supervisor and may be used in accordance with Penitentiary Directive No. 09.017, Transportation of Offenders. Such approval shall be obtained in advance, if possible.

1) When transporting or moving an offender within or outside of the institution in accordance with institutional procedures;

2) When transporting an offender whose medical condition is not conducive to full use of restraints;

3) When the past history and/or present behavior of the offender creates the possibility of bodily harm to any person, property damage or escape;

4) During court appearances when the Court issues an order that the other restraints be removed (see Department Regulation No. C-03-003 "Escorted Absences" for additional information) or other such activities where the use of restraints that are not visible or prominently observable is preferred.

Penitentiary Directive No. 09.002
May 3, 2013
Page 14 of 18

b.     The Medical Director or his designee should be consulted to be medical clearance for electronic restraint belt use and the electronic restraint belt should never knowingly be used on the following offenders:

1)     Elderly offenders over 65 years of age;

2)     Wheelchair bound;

3)     Severely ill offenders:

a)     Cardiac: Offenders with pacemakers or defibrillators, coronary artery disease or congestive heart failure;

b)     Liver: Offenders with cirrhosis and swelling of the legs or abdomen;

c)     Kidney: Offenders on dialysis;

d)     Stroke: Offenders that have trouble ambulating and therefore, use a cane or walker;

e)     HIV: Offenders with a CD4 count of 50 or less;

f)     Lung: Offenders with chronic obstructive pulmonary disease (COPD) or asthma bad enough to require more than one inhaler for treatment;

g)     Cancer: Offenders with a current diagnosis of cancer.

d.     Except as stated in D, 6, b the electronic restraint belt may also be otherwise used at the discretion of the Warden or designee in accordance with the provisions of this Section.

e.     After Use

1)     When EMD's have been used, affected offender(s) that suffered the electrical shock(s) shall be examined by qualified medical personnel as soon as possible after the situation has been brought under control.

2)     Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

Penitentiary Directive No. 09.002
May 3, 2013
Page 15 of 18

      3)     All instances in which EMD's are used shall be reported in accordance with Section F of this regulation.

E.    CANINE UNITS

Canine units shall be available to conduct building searches for offenders, to assist in escape procedures, to protect officers and others from serious bodily injury and death, to control crowds/riots, and to detect the presence of concealed contraband.

1.    The Warden or his designee shall be responsible for determining whether a situation justifies canine use and appropriate tactical measures that should be taken.

2.    Canines shall not be handled or given commands by anyone other than the assigned handler and/or his alternate.

3.    Unless otherwise approved by the Warden or his designee, canines shall be used in a leashed condition at all times.

4.    Canines may be used between the fences to provide perimeter security, when deemed necessary by the Warden or his designee. In the event that canines are utilized in providing perimeter security, one officer will provide roving security.

F.    REPORTING REQUIREMENTS

1.    All situations involving the use of force, including the discharge of any firearms, use of chemical agents and use of other security equipment (except for training purposes) must be documented to establish the identity of personnel and offenders involved and to describe the nature of the incident. In reporting instances, the standard Unusual Occurrence Report (UOR) shall be submitted to the Warden or designee as soon as possible after the incident, but no later than the end of tour of duty and shall be reviewed by the Warden or designee. Each time the electronic device is used the Armory will provide a Use of Electronic Device Documentation (Form 09.002-A) to be completed and forwarded to the appropriate areas.

NOTE: This review does not include incidents where mechanical restraints are applied to an offender in a calm, non-hostile situation where no other use of force was required, i.e., instructing an offender to allow an officer to apply handcuffs in order to be escorted to the cell block following a rule violation.

2.    The Warden or designee shall investigate all allegations of improper use of force and shall notify other authorities, as appropriate.

Penitentiary Directive No. 09.002
May 3, 2013
Page 16 of 18

3.      Reporting in accordance with Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports Operational Units" is required.

4.      Administrative review of use of force incidents shall be conducted in accordance with the provisions of Department Regulation Nos. C-01-008 "Firearms and Weaponry Training" and C-05-001A "Serious Unusual Occurrence Review Panel."

G.    EXAMINATION BY MEDICAL STAFF

As soon as possible after a situation has been brought under control through the use of force, the offender involved shall be examined by qualified medical personnel. Staff may be referred to institutional medical personnel as appropriate based on the circumstances.

H.    SECURITY EQUIPMENT – ACCESS, STORAGE AND INVENTORY

1.      The Armory is responsible for the maintenance and distribution of security equipment to all units, except canine units. Only personnel designated by the Assistant Warden IV/Security shall have access to the Armory's security equipment storage area. The Armory is responsible for the issuance of security equipment to authorized personnel for the performance of official duties, e.g., field officers, trip officers, roving security, tower officers, tactical unit personnel and chase team personnel. Any other issuance of security equipment shall be at the discretion of the Warden or his designee.

2.      The Armory shall issue security equipment to authorized personnel such as shift supervisors and senior security officers of designated areas for use within the institution. Issuance of these items shall be documented by the issuing officers and signed by the receiving officer.

3.      The Armory shall maintain an inventory of all weapons, ammunition, chemical agents, and related security devices. A written record will be maintained by Armory personnel regarding the issuance of any equipment in order to determine accountability and responsibility. This report, which will be submitted to the Assistant Warden IV/Security at least monthly, will detail weapon conditions and list expiration dates of other equipment.

4.      At the beginning of each shift, Armory personnel will perform a test of the electronic devices. The results of the tests will be documented. If the electronic device fails the test, the Armory officer will notify the Communications Department to arrange for repairs.

Penitentiary Directive No. 09.002
May 3, 2013
Page 17 of 18

5.  Cellblock units will store chemical agents in a locked cabinet. Chemical agents stored in the cabinet will be inventoried daily. At the beginning and the end of the shift, the Cellblock supervisor will log the weight of each can in the logbook.

6.  In the event that chemical agents are used, the name and number of the offender the agent was used on will also need to be logged in the logbook. The can will be weighed after the incident and the new weight noted in the logbook.

7.  It is the responsibility of each respective Assistant Warden to ensure that expired agents and empty cans are sent to the Armory for replacement.

I.  LAW ENFORCEMENT/VISITOR WEAPONS

1.  Unless authorized by the Warden, law enforcement officers and visitors are not permitted to carry their firearms inside the confines of the prison.

2.  Perimeter gate security personnel will secure weapons in a secure storage locker and issue receipts to the owners of the weapons.

J.  ABUSE OF OFFENDERS, CORPORAL PUNISHMENT, OR USE OF UNNECESSARY OR EXCESSIVE FORCE

1.  No employee shall abuse an offender for any reason. Violations are actionable under the Corrections Services Employee Manual, Employee Rules and Disciplinary Procedures.

2.  The force used shall be proportional to the threat to which it is a response and shall cease when the resistance ceases.

3.  Necessary force may include the use of physical contact, chemical agents, intermediate/impact weapons and other less lethal weapons and munitions, mechanical restraints, electric muscular disruption devices, and firearms.

4.  The following uses of force are prohibited: corporal punishment, unnecessary force, and excessive force.

K.  TRAINING

1.  All correctional officers and other appropriate employees shall be provided a copy of the current use of force policy and thoroughly trained pursuant to Department Regulation No. C-01-008 before being authorized to carry any weapon. Authorized employees shall be instructed in accordance with the regulation, including policies and procedures, and shall be provided with

Penitentiary Directive No. 09:002
May 3, 2013
Page 18 of 18

necessary training and retraining at least annually.  Employees shall adhere to the principles and practices of the regulation during training sessions.

2.	All Corrections Security Officers will be trained in approved methods of self-defense and the use of force continuum.

3.	Only those authorized employees who have successfully completed specialized training and/or qualification in the operation and use of less lethal and/or lethal weapons may use such weapons.

4.	All Instructors authorized to train others in the use of firearms, use of chemical agents, and use of force are certified by a competent authority to conduct such training.  All chemical agent instructors must be trained in the treatment of individuals exposed to a chemical agent.

Burl Cain, CCE
Warden


Attachment:	DPS&C Weapons List

Form:	LSP-09.002-A	Use of Electronic Device Documentation


This policy supersedes Penitentiary Directive No. 09.002 dated June 27, 2011.

Department Regulation No. C-01-008 and C-02-006
20 December 2010

## WEAPONS LIST

The following weapons only are approved for purchase without authorization from the Secretary or designee.

### MECHANICAL AND FLEX CUFF RESTRAINTS
(See Section 10. of Department Regulation No. C-02-006)

### Applies to Department Regulation No. C-02-006 "Use of Force" ONLY

Legirons

Handcuffs (with standard case)

Flexcuffs

Restraint Belt with or without black box

Grip Restraint System

Side Restraints

Leather Belt Restraints

Leg and Arm Braces

Soft Wrist and Ankle Restraints

The Tube

Facial Protective Mask

### EXTREME RESTRAINTS
(See Section 11. of Department Regulation No. C-02-006)

Restraint Chair

Straitjacket

### CHEMICAL AGENTS, INTERMEDIATE IMPACT WEAPONS AND OTHER LESS LETHAL WEAPONS
(See Section 12. of Department Regulation No. C-02-006)

1.    **Chemical Aerosols**

Capstun - OC

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Two

Deep Freeze – OC/CS

Freeze +P – OC/CS

Clear Out – OC/CS

Punch II - OC

Body Guard - OC

Sabre Red - OC

Fox 5.3 - OC

First Defense HV Stream – OC

2.    **Chemical Grenades**

HC Smoke/CN/CS

CN/CS Rubber Ball

CN/CS/OC Blast Dispersion

3.    **Chemical Projectiles (HC, CN, CS)**

Short/long range

Blast/Muzzle dispersion

Barricade Flight/Skate Shell - Deleted 11/15/06 - May Utilize Existing Inventory
Only

Barricade Penetrating Round

Flite Rite - Deleted 11/15/06 - May Utilize Existing Inventory Only

Skat Shell

Stinger cartridge and product - Deleted 4/20/99 - May Utilize Existing Inventory
Only

TKO Fragible Slug - Deleted 11/15/06 - May Utilize Existing Inventory Only

Door Breaching Round

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Three

12 Gauge Rubber Pellets - Deleted 4/20/99 - May Utilize Existing Inventory Only

Multiple Baton Shell - Deleted 4/20/99 - May Utilize Existing Inventory Only

Fogger Additives

Pepper Fogger Machine/Smoke Generator

Fox mixes/CN/CS/OC

Flush mix

Insert Screening Smoke

4.    **Chemical Agent Launching Systems and Chemical Dispersants**

Ispra Israeli gas gun and CS Irritant

Israeli Protecto-jet and Solution

37 mm Caliber: gas gun/launcher (Def Tec, Smith & Wesson, Ferret, Federal and Penn Arms)

1.5 Caliber: gas gun - Deleted 11/15/06 - May Utilize Existing Inventory Only

40 mm Caliber: gas gun/launcher (Def Tec, Fed Labs, Smith & Wesson, Ferret and Federal)

5.    **Intermediate/Impact Weapons**

24" riot batons

36" riot batons

PR 24 batons

Expandable batons

Concave riot shield

Convex riot shield

Bullet Resistant Shield

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Four

6.    Other Less Lethal Weapons

Stinger Grenade, Rubber Pellet and Rubber Pellet Combo CS (Mandatory)

12 Gauge Projectiles (Low Velocity Rubber Pellet and Rubber Sabot and Combo CS) (Mandatory)

Bean Bag Rounds for 12 Gauge and 37 mm Caliber (Mandatory) and 40 mm Caliber (Discretionary)

Multiple Baton Round Wood or Foam Rubber 37/38 mm Caliber (Mandatory) and 40 mm Caliber (Discretionary)

SA 200 Pepper Launcher Semi Automatic Rifle (Discretionary)

Pepperball rounds (OC powder filled, Inert powder filled, Inert liquid filled) (Discretionary)

12 Gauge Blank Launching Rounds (Discretionary)

Distraction Device (Concussion Grenade and 12 Gauge and 40 mm Caliber) (Discretionary)

Stinger Cartridges for 37/38 mm Caliber (Discretionary) and 40 mm Caliber (Discretionary)

Flexible Baton 12 Gauge close range (10 to 50 feet) (Discretionary)

Flexible Baton 37 mm Caliber and 40 mm Caliber close range (10 to 65 feet) (Discretionary)

Grab Nets (Discretionary)

Spike System (Discretionary)

Canines (Discretionary)

### ELECTRONIC MUSCULAR DISRUPTION DEVICES
### (See Section 13. of Department Regulation No. C-02-006)

Electronic Capture Shield (Mandatory)

Electronic Nova RACC Restraint Belt System (Mandatory)

TASER® and cartridges (Applies to Department Regulation No. C-02-006A "Use of TASER®" ONLY)

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Five

## LETHAL WEAPONS
### (See Section 14. of Department Regulation No. C-02-006)

1.    **Handguns**

.40 Caliber: Smith and Wesson, Glock, Ruger, Sig Sauer, Springfield Armory and Kimber Arms

.38 Caliber: Smith and Wesson, Colt and Ruger

.357 Caliber: Smith and Wesson, Colt, Dan Wesson and Ruger

9mm Caliber: Smith and Wesson, Glock, Ruger, Sig Sauer, Springfield Armory and Kimber Arms

.45 Caliber: Ingram Model 6, Springfield Armory and Kimber Arms

.357 Sig Caliber: Sig Sauer

(Or equivalent caliber/function as may be available on state contract under different brand names.)

2.    **Rifles**

.223 Caliber: Colt AR-15 SP-1, Ruger Mini-14 and Bushmaster A3 M4 Patrolman

.30 Caliber: Universal M-1 carbine

30-30 Caliber: Marlin #336C and Winchester #94 - Deleted 10/31/02 - May Utilize Existing Inventory Only

30-06 Caliber: Winchester #70 and Remington #700

.300 Caliber: Winchester #700 Magnum Caliber

.308 Caliber: Remington #700

.243 Caliber: Remington #700

9 mm Caliber, 10 mm Caliber and 40 Caliber: Heckler and Koch MP5

45 ACP Caliber: Car 45 Olympic Arms

(Or equivalent caliber/function as may be available on state contract under different brand names.)

Department Regulation Nos. C-01-008 and C-02-006
20 December 2010
Page Six

3.    **Shotguns**

12 gauge Winchester #1200

12 gauge Mossberg #3000

12 gauge Remington #870 and #1100

12 gauge Ithaca #37

(Or equivalent gauge/function as may be available on state contract under different brand names.)

4.    **Ammunition**

Appropriate ammunition may be purchased for each weapon listed herein.

LSP-09.002-A
July 2, 2004

LOUISIANA STATE PENITENTIARY
## USE OF ELECTRONIC DEVICE DOCUMENTATION

| DATE: | TIME: |
|---|---|
| OFFENDER(S) | DOC# |
| | |
| | |
| | |
| CIRCUMSTANCES REQUIRING USE OF ELECTRONIC DEVICE | |
| | |
| | |
| | |
| | |
| | |
| SUPERVISOR AUTHORIZING USE OF ELECTRONIC DEVICE | |
| EMPLOYEE OPERATING ELECTRONIC DEVICE | |
| OTHER EMPLOYEES ENTERING CELL | |
| | |
| | |
| OTHER WITNESSES | |
| | |
| COMMENTS ABOUT ACTUAL USE OF ELECTRONIC DEVICE (How many seconds used, number of times used, effects on the offender, any effects on employees, problems with the device, etc.) | |
| | |
| | |
| | |
| EMT OR OTHER MEDICAL PERSONNEL WHO EXAMINED OFFENDER(S) AFTER USE OF ELECTRONIC DEVICE | |
| | |
| | |

This form is to be completed each time the Electronic Device is used. Unusual Occurrence Reports will also be prepared and attached. Distribution of reports is to follow the same method used to distribute UORs with an additional copy going to Medical Records.