UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE ARITA (#422864)                             CIVIL ACTION

VERSUS

MAJ. HOOKER, ET AL.                                  NO. 14-0116-BAJ-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 3, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

THEODORE ARITA (#422864)                                      CIVIL ACTION

VERSUS

MAJ. HOOKER, ET AL.                                           NO. 14-0116-BAJ-EWD

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the defendants' Motions for Summary Judgment (R. Docs. 61 and 132). These motions are opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Major Joseph Hooker, Col. Jimmy Smith, unidentified "John Doe" members of the LSP Tactical Team, unidentified "John Doe" LSP medical technicians, and an unidentified "John Doe" physician, complaining that his constitutional rights were violated by the defendants on November 29, 2012, when he was sprayed with a chemical agent and beaten without provocation and when he was denied appropriate medical and mental health attention. The unidentified members of the LSP Tactical Team have since been identified as Lt. Peter Lolis, Lt.Col. Grady Gagnard, Capt. Eric Bernard, Lt. Scott Kennedy and Lt. Marcus Jones, *see* R. Docs. 65 and 68, all of whom have been served and have appeared in this proceeding. Pursuant to a prior Magistrate Judge's Report in this case (R. Doc. 35), approved by the District Judge on February 9, 2015, (R. Doc. 37), the plaintiff's claims of deliberate medical indifference asserted against defendants Joseph Hooker and Jimmy Smith have been dismissed, leaving only the plaintiff's claim of excessive force asserted against the

defendants.[1]

The defendants now move for summary judgment relying upon the pleadings, Statements of Undisputed Facts, certified copies of the plaintiff's medical and mental health records, a certified copy of a disciplinary report prepared by defendant Joseph Hooker on November 29, 2012 (charging the plaintiff with "Defiance" and "Aggravated Disobedience"), certified copies of Unusual Occurrence Reports prepared by defendants Joseph Hooker, Eric Bernard, Grady Gagnard, Marcus Jones, Scott Kennedy and Peter Lolis, a certified copy of the Camp J Gator Unit Chemical Agent Logbook for the dates November 29-30, 2012, certified copies of time clock cards for Camp J Gator Unit for the dates November 29-30, 2012, a copy of an expert report dated April 9, 2015, prepared by Dr. Paul Toce, photographs taken of the plaintiff on November 29, 2012, excerpts from the deposition transcripts of the plaintiff and co-inmates Kelvin Steward, Rickey Evans, Vidale Tasby and Haywood Caesar, and the affidavits of Dr. Paul Toce and defendants Jimmy Smith, Joseph Hooker, Eric Bernard, Peter Lolis, Scott Kennedy, Grady Gagnard and Marcus Jones.

---

[1].  A review of the record reflects that certain persons who were named as defendants in the plaintiff's Complaint and identified as being "John Doe" medical technicians and a "John Doe" treating physician have not been identified or served. Specifically, an attempt to serve these defendants at the offices of the Louisiana Department of Public Safety and Corrections was unsuccessful because the Department would not accept service on their behalf in the absence of proper identification. *See* R. Doc. 8. Whereas the plaintiff has since taken action to amend his Complaint and serve other unidentified defendants, *see* R. Doc. 65, the plaintiff has failed to take action to amend the Complaint and identify the "John Doe" medical defendants or obtain service upon them. Although an inmate plaintiff is entitled to rely upon service by the United States Marshal, "a plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should attempt to remedy any apparent service defects of which a plaintiff has knowledge." *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987). In the instant case, the plaintiff clearly had knowledge of non-service upon the "John Doe" medical defendants because (1) he was served with the Marshal's Return of Service, R. Doc. 8, that indicated that service had not been effected upon them, and (2) he has been served with all subsequent pleadings that reflect no appearance having been made on their behalf. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff, without good cause, to serve a defendant within 120 days of commencement of an action -- now 90 days pursuant to a recent amendment -- is justification for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against the "John Doe" medical defendants be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon them. *See Stuart v. Villareal*, 2004 WL 906177, *1-2 (N.D. Tex., March 9, 2004)(dismissing *pro se* prisoner's claims under Rule 4(m)).

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v.*

*Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that on November 29, 2012, he was subjected to excessive force in violation of his constitutional rights. Specifically, the plaintiff alleges that on that date, Major Hooker sprayed a chemical agent into the cell of a co-inmate, Michael Stewart. According to the plaintiff, while co-inmate Stewart was being sprayed, Sgt. Hunter (not named as a defendant herein) began closing the booth cell doors to all of the cells on the Camp J Gator tier. The plaintiff alleges that he respectfully asked Sgt. Hunter to leave his cell door open because he was experiencing difficulty breathing as a result of the chemical agent sprayed on the tier. According to the plaintiff, defendant Hooker overheard the plaintiff's request and became extremely angry. The plaintiff alleges that Major Hooker began running up and down the tier asking, "who's gonna be next?" and "who's in my motha-f***ing business?" According to the plaintiff, Major Hooker approached the plaintiff's cell and, after accusing the plaintiff of interfering, began spraying the plaintiff with a chemical agent. The plaintiff alleges that although he asked to be seen by a mental health professional, Major Hooker ignored this request and instead closed the plaintiff's booth cell door.

Approximately 15-20 minutes later, according to the plaintiff, the door to his cell was opened, and he observed Major Hooker, Col. Smith, and a tactical team standing outside his cell. The plaintiff alleges that he attempted to place his hands through the hatch in the cell bars to be restrained and asked to declare himself a mental health emergency, but Major Hooker once again sprayed him with a chemical agent. The plaintiff alleges that Major Hooker then stated, "beat his a** good, and try not to leave too many visible injuries or kill the sorry b*tch," whereupon the tactical team entered his cell and shocked him with the electric shield forcing him to the floor.

4

The plaintiff alleges that the members of the tactical team then punched, kneed, kicked and stomped him while he lay helpless on the floor offering no resistance and repeatedly stating that he surrendered. The plaintiff alleges that he was then placed in restraints, and the tactical team continued to beat him and shock him with the electrical shield for over 15 minutes. The plaintiff alleges that Major Hooker and Col. Smith stood in the hallway watching the entire incident.

The plaintiff alleges that he was then raised from the floor of the cell, and a member of the tactical team repeatedly kneed him in the face until he lost consciousness. The plaintiff alleges that when he regained consciousness, he was sitting in the doorway of his cell, and someone held his head while Major Hooker again sprayed chemical agent into his eyes and face. The plaintiff alleges that he was then dragged off the tier, barely able to stand without assistance.

Upon entering the lobby of Gator Unit, Major Hooker allegedly ordered the tactical team officers to place the plaintiff in the shower cell. The plaintiff alleges that, after dragging him into the shower cell, two tactical team members kicked his legs from under him, causing him to fall to the floor, whereupon he was struck several times in the face and head. Major Hooker then entered the shower area and allegedly slapped the plaintiff and twisted the plaintiff's hand. The plaintiff alleges that Major Hooker asked if the plaintiff was going to stay out of the defendant's business and continued assaulting the plaintiff until the plaintiff responded. The plaintiff alleges that Major Hooker then released him, sprayed another burst of chemical agent into his face, and exited the cell. The plaintiff alleges that he observed several officers, including Col. Smith, watching the whole incident and laughing.

As a result of the foregoing events, the plaintiff alleges that he sustained injuries to his head, elbow, knee, back and tailbone. The plaintiff asserts that although he was taken to the

5

prison infirmary after the incident, the medical technicians and physician who examined and treated him had bad attitudes, failed to conduct an adequate examination, failed to document his injuries and complaints, and told him that there was nothing wrong with him. Although an x-ray of the plaintiff's head was ordered, the plaintiff complains that no x-rays were ordered of his elbow, knee, back or tailbone. The plaintiff further complains that the medical technician who took photographs failed to take photographs of the right side of the plaintiff's face and swollen eye.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to present evidence sufficient to support a finding that the defendants violated the plaintiff's constitutional rights through excessive force. They assert that the force utilized against the plaintiff on the referenced date was reasonable and necessary to obtain compliance from an inmate who was causing a disturbance, who repeatedly disobeyed orders to cease the disturbance and to come to the bars of his cell to be restrained, and who thereafter became combative and struggled against security officers.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). The Court considers whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001), should not be "regarded as an inflexible requirement," but may be considered if a court wishes). Courts now have discretion to decide

which of the two prongs of the analysis to address first.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  *Saucier*, 194 U.S. at 201.   The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  *Id.* at 202.  The assertion of the qualified immunity defense alters the summary judgment burden of proof.  *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motions for summary judgment should be denied.  Specifically, the Court concludes that there are material facts in dispute in this case that preclude the grant of summary judgment in the defendants' favor.

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *relying upon Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however.  The Eighth Amendment's prohibition against cruel and unusual punishment

necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

There is a conceptual distinction between a *de minimis* injury and a *de minimis* use of force. *Wilkins v. Gaddy, supra*, 559 U.S. at 38 ("Injury and force ... are only imperfectly correlated, and it is the latter that ultimately counts"). The fact that an inmate may have sustained only minimal injury does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* For Eighth Amendment purposes, evidence of the existence and extent of injuries, while not dispositive, may be considered in conjunction with other factors to help determine whether the force used was excessive. *See Brown v. Lippard,* 472 F.3d 384, 386 (5th Cir. 2006) ("In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur'"). Other factors that may be considered include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

In addition to the foregoing, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force. The test in such instance is whether the observing officer had actual knowledge of a substantial risk of harm to the inmate yet disregarded that risk by failing to take

8

reasonable measures to prevent the resulting harm.  *See Luken v. Lynaugh*, 98 F.3d 1339, *4 (5th Cir. 1996) ("A convicted inmates failure-to-protect claim is evaluated under the Eighth Amendment's 'deliberate indifference' standard").

Applying the foregoing standards, it appears clear that there are material disputed questions of fact in this case that preclude a grant of summary judgment in favor of the defendants. Whereas the defendants have provided sworn assertions that they utilized only necessary and reasonable force against the plaintiff on November 29, 2012, in response to the plaintiff's disruptive, recalcitrant and combative behavior, the plaintiff has produced his own sworn statement, provided under penalty of perjury as authorized by 28 U.S.C. § 1746, as well as similar sworn statements by five co-inmates, which statements attest that unnecessary and unreasonable force was utilized against the plaintiff on that date.  These competing sworn assertions necessitate a credibility determination that is not appropriate for the Court to make on motion for summary judgment.  This Court reached a similar conclusion in denying the previous Motion for Partial Summary Judgment filed by defendants Major Hooker and Col. Smith in this case, *see* R. Docs. 35 and 37.  Whereas the defendants focus upon (1) the dearth of objective medical evidence to support a finding that the plaintiff was subjected to more than a *de minimis* use of force, and (2) their assertion that the Camp J Gator Unit time cards do not reflect the presence of Col. Smith on the Unit during the times indicated, this Court has previously addressed these matters in a prior Magistrate Judge's Report, stating as follows:

> Even if the medical records show that the plaintiff could prove only that he suffered minor injuries to his right elbow and left knee, this is not per se a *de minimis* injury.  At the time of the alleged incident, a reasonable corrections officer would have known that spraying an inmate with an excessive amount of chemical agent and causing the inmate to be violently beaten without provocation was not objectively reasonable.  *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct.

9

> 1078 (1986) (force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline). There are also significant material facts in dispute regarding the remaining *Hudson* factors, i.e., need for the application of any force at all, the relationship between the need for and the use of force, the threat reasonably perceived by the prison officials, and efforts made to temper the severity of the response to the perceived need. *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 998-999. Finally, there are material facts in dispute as to whether Col. Smith was present and involved in the November 29, 2012 incident. Resolution of these disputed factual issues will depend on the credibility of the witnesses and weighing of the evidence. When ruling on a motion for summary judgment, the court cannot make credibility determinations nor weigh the evidence.

*See* R. Doc. 35 at pp. 15-16. Although the defendants have supplemented their initial summary judgment evidence with the Camp J time cards for the date in question, with an expert report prepared by Dr. Paul Toce, with excerpts from the deposition testimony of the plaintiff and five co-inmate inmate witnesses, with affidavits and Occurrence Reports prepared by the members of the LSP Tactical Team, and with photographs of the plaintiff's injuries taken after the events complained of, this evidence does not alter the fundamental nature of the factual questions in this case that may only be resolved by the jury. Accordingly, the defendants' pending Motions for Summary Judgment (R. Docs. 61 and 132) should be denied.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, the Court concludes that any state law claims would potentially predominate over the remaining Eighth Amendment claim of excessive force in this case. Accordingly, the Court

10

recommends that supplemental jurisdiction be declined in connection with any potential state law claims.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against the unidentified "John Doe" medical providers be dismissed for failure of the plaintiff to identify and serve these defendants within the time allowed by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the Court decline the exercise of supplement jurisdiction over any potential state law claims, that the defendants' Motions for Summary Judgment (R. Docs. 61 and 132) be denied, and that this matter be referred back to the Magistrate Judge for further proceedings in connection with the plaintiff's Eighth Amendment claim of excessive force asserted against the defendants.

Signed in Baton Rouge, Louisiana, on March 3, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**